In the Matter of The STRATTON GROUP, LTD. t/a John's Bargain Stores f/t/a Jean World, Bankrupt.

### Claim of ELCO LAMP & SHADE STUDIO, INC.

### Bankruptcy No. 76–B–1156.

United States Bankruptcy Court, S. D. New York.

July 9, 1981.

Angel & Frankel, P. C., New York City, f/k/a Marcus & Angel, P. C., for Lawrence Sarf Trustee in Bankruptcy.

Jacob Fogelson, New York City, for claimant.

## OPINION

ROY BABITT, Bankruptcy Judge:

In 1973, pursuant to Section 322 of the Bankruptcy Act of 1898, 11 U.S.C. (1976 ed.) § 722, the debtor, The Stratton Group, Ltd. (hereinafter known as Stratton) filed its Chapter XI petition with this court.

On July 28, 1975, an order was entered confirming the plan proposed by Stratton and accepted by its creditors. That plan provided that unsecured creditors would receive 35% of their claims, 2½% payable in cash upon confirmation of the plan, 6% payable on January 15, 1976. The remaining 26½% was to be paid over a four year period.

Stratton made the required payments through January, 1976, but as it was unable to make the further payments promised in the plan, it filed a straight bankruptcy petition on May 13, 1976. This step was necessary as the terms of the confirmed Chapter XI plan did not give this court the retained jurisdiction it would need to convert a confirmed Chapter XI to a liquidating bankruptcy for failure of the debtor to consummate its proposals. Compare *In re Borgenicht*, 479 F.2d 150 (2d Cir. 1973), where post-confirmation modification was refused as the confirmed plan did not confer such jurisdiction on the bankruptcy court.[1]

During the unfolding of the Chapter XI process, Elco Lamp & Shade Studio, Inc. (hereinafter known as Elco) filed a claim as one of Stratton's unsecured creditors and that claim, in keeping with other unsecured claims, was "provided for by the arrangement", Section 371, 11 U.S.C. (1976 ed.) § 771, to the extent already explained. Thus, the Elco claim was promised 35% of its allowed amount over the period contemplated, and that amount was, in fact, diminished by the 2½% confirmation payment and by the 6% payment due in January, 1976. On default, therefore, Elco had received 8½% and was still owed 26½% when the bankruptcy petition was filed.

The trustee's administration of the bankrupt estate is close to completion. Prior to distribution of the assets in keeping with the scheme of the Act, the trustee, in his review of claims permitted to share in the estate, asks this court to fix Elco's claim at the 35% of the original claim asserted against Stratton as Chapter XI debtor, less the 8½% received. The trustee bottoms his position on Section 371 of the Act, 11 U.S.C. (1976 ed.) § 771, which provides that confirmation of a Chapter XI plan achieves a discharge of the remainder of the original claim—here 65% of Elco's true claim. Not surprisingly, Elco argues that in light of the Chapter XI default and the subsequent bankruptcy, its claim must be restored to the original indebtedness less the 8½% received. Elco, too, rests as it must, on Section 371, and so the court starts with its text. That section provides that:

1. The Stratton bankruptcy, filed under the now repealed 1898 Act, continues to be governed by that statute despite the enactment of the 1978 Code, Pub.L. 95–598, effective October 1, 1979. Section 403(a) of Title IV of the 1978 statute, 92 Stat. 2683, insists that this be so.

"The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 17 of this Act, are not dischargeable".[2]

At the outset, it is important to observe what the Elco claim is and what it is not. It is not a claim arising between confirmation of the plan and the subsequent bankruptcy. Rather, it existed as an unpaid obligation of Stratton when the Chapter XI petition was filed. As such, it was dealt with in the plan and was to be dealt with as there promised by the debtor and accepted by its creditors. Section 362(1), 11 U.S.C. (1976 ed.) § 762(1).

The law of bankruptcy is replete with reaffirmations of the strength of the policy behind provisions for extinguishment of debts. While specific requirements to secure a discharge of debts, as well as the modes for creditor objections, have changed since the Bankruptcy Act of 1800, 2 Stat. 19, every piece of bankruptcy legislation has recognized the critical nature of discharge, with its consequent "fresh start" for the debtor. See *Jacobs v. Fensterstock*, 236 N.Y. 39, 139 N.E. 772 (1923); *Hardie v. Swafford Bros. Dry Goods Co.*, 165 F. 588 (5th Cir. 1908). All bankruptcy statutes, beginning with the Act of 1800, provided for discharge of a bankrupt's debts and encouraged out of court settlements. See Section 43 of the Act of 1800, 2 Stat. 19; Section 4 of the Act of 1841, 5 Stat. 440; Section 34 of the Act of 1867, 14 Stat. 517.[3]

An examination of the nature of this discharge reveals a critical distinction which must be drawn between a discharge arising from confirmation of a bankruptcy arrangement and the contractual release from debts resulting from a composition outside of bankruptcy. *In re Kornbluth*, 65 F.2d 400 (2d Cir. 1933). Within the common law theories of contracts, a composition is generally defined as an agreement between the debtor and creditors whereby a creditor agrees to accept in full satisfaction something less than the amounts of the original claim. 6 *Corbin on Contracts*, § 1283. Such a composition is an executory accord, and results in a satisfaction and discharge only when performance is rendered. *Id.* It is generally the accepted performance of the agreement, and not the mere promise which amounts to a satisfaction. *Moers v. Moers*, 229 N.Y. 294, 128 N.E. 202 (1920). Therefore, under the common law of contracts, failure of full performance by the debtor would allow creditors to maintain an action for the amount of the original claim. *Op. cit.*

But, it has been stated under the common law that by assenting to a confirmation, a creditor extinguishes a previous duty of the debtor to himself, and simultaneously extinguishes his previous right against that party. 6 *Corbin on Contracts*, § 1289. In the discussion on accord and satisfaction in a creditor-debtor situation, the *Corbin* treatise observes that:

"It is sometimes said that the creditor is making an implied 'promise' never to sue for the balance of his claim, but even if this has any foundation in fact, there is no reason for overlooking his express assent to the immediate extinction and discharge of the claim. After such a discharge, a subsequent suit by the creditor should be fruitless".

6 *Corbin on Contracts*, § 1289.

The applicable New York law dealing with accord and satisfaction is found in its General Obligations Law § 15–501, which defines an executory accord as:

"an agreement embodying a promise to accept at some future time a stipulated performance in discharge in whole or part of any present claim . . . and a promise to render such performance . . . . If an ex-

---

2. Elco does not contend that any part of its claim is not discharged within the meaning of Section 17(a) of the Act, 11 U.S.C. (1976 ed.) § 35(a).

3. These sections all provided for the discharge of the bankrupt's debts, seen as binding and as a bar against further creditor suits to collect such discharged debts.

ecutory accord is not performed according to its terms by one party, the other party shall be entitled to assert his rights either under the claim or the accord".

■ There are exceptions to this rule, however. One of these exceptions is when the new promise is intended and accepted by the parties as a substitution for the prior obligation. In such case, the new contract, even though it could be considered an executory accord, is seen as a substitute for the original claim, which is merged in it, and is, in and of itself, binding upon the parties. *Silver Dresses v. Parker*, 73 N.Y.S.2d 704 (Sup.Ct. Special Term 1947), citing *Moers v. Moers, supra.*

It is thus seen there can be vastly different consequences within the common law when an offer of compromise is accepted but which subsequently fails of consummation. The framers of the 1898 Bankruptcy Act, wishing to avoid confusion on a concept so central in bankruptcy, offered explicit language on the nature of a discharge within a confirmation.

Section 14(c) of the Bankruptcy Act of 1898, as then enacted, provided that the confirmation of a composition would discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition. In *Jacobs v. Fensterstock, supra*, the New York Court of Appeals interpreted the phrase "those [debts] agreed to be paid by the terms of the composition" to mean the notes given on the composition. The composition thus acted as a settlement and discharge of the old debts. The promises made on the composition released the debtor, and if they were not fulfilled, the remedy was only upon those promises. *Nordlinger v. Libow*, 136 Misc. 438, 240 N.Y.S. 193 (City Court 1930), citing *Jacobs v. Fensterstock.* See also *In re Kornbluth, supra.*[4]

■ When the 1898 Act was amended to provide for Chapter XI arrangements, Section 371, 11 U.S.C. (1976 ed.) § 771, was part of the Chapter XI scheme and was the analogue, therefore, of Section 14(c) of the 1898 Act which had no Chapter XI provisions until 1938. By incorporating language from Section 14(c) into Section 371, it may be presumed that Congress was aware of the prior judicial interpretation of the statute. *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980). And when a statute is reenacted without substantial change, Congress is presumed to have adopted that judicial interpretation. *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1977).

■ Thus, when Congress, in Section 371, defined the confirmation discharge to release the rehabilitated debtor from all his unsecured debts provided for by the plan, Congress gave meaning to its policy of affording debtors rehabilitation and a fresh start. Confirmation fixes the reach of claims that are allowed and that the debtor treats in the plan. Where the debtor effects a composition, he is relieved of his old debts and simply has the burden of achieving the promises made in the composition. The composition thus operates as an absolute settlement, and the failure to pay unpaid obligations created by the plan will not revive the old debts. *Jacobs v. Fensterstock, supra*, citing *In re Mirkus*, 289 F. 732 (2d Cir. 1923). In the composition plan, the creditor receives what he bargained for there and has *no right to claim more*. *In re Lane*, 125 F. 772 (D.C.Mass.1902). There is nothing in the Act to suggest that the debtor's failure to achieve promises made in a confirmed plan reinstates an original obligation. *In re Setzler*, 73 F.Supp. 314 (D.C. Cal.1947). It would take a much clearer expression by Congress to enforce a policy wherein a debtor who unsuccessfully attempts to rehabilitate himself and benefit his creditors through a confirmed plan finds himself obligated for the original amount of the debts, whereas a straight bankrupt is discharged of all his obligations.

While the question is not entirely free from doubt, this court's conclusion finds

4. *Vogel v. Mohawk Electric Sales Co.*, 126 F.2d 759 (2d Cir. 1942), is not to the contrary for there the court spoke at p. 761 of the priority of claims and not of the effect of a discharge or its reach on confirmation of a Chapter XI plan.

support in the language of Section 371. The phrase "unsecured debts and liabilities provided for by the arrangement" obviously means the treatment given the debts by the plan and not, as Elco would have it, the amount actually promised. The word "debt" is defined by Section 1(14), 11 U.S.C. (1976 ed.) § 1(14), to mean the totality of an obligation which may be asserted in a proceeding under the Act. These are the debts provided for in the debtor's plan and discharged by confirmation. How the debtor composes them in the plan and how the debtor achieves his promises is something else.

Accordingly, in this dispute, that something else merely means that Elco is entitled to its 35% less what it was paid. The 65% of its original debt was released by the discharge of the confirmation and the trustee in bankruptcy is entitled to an order reflecting this disposition of Elco's claim in the debtor's ensuing bankruptcy. Submit such an order.