In the Matter of Lyle Dewayne RICHARDSON and Nellie Jane Richardson, Debtors.

UNITED STATES of America, FARMERS HOME ADMINISTRATION, Plaintiff,

v.

Lyle Dewayne RICHARDSON and Nellie Jane Richardson, Defendants.

Bankruptcy No. 84–01253–3.
Adv. No. 85–0453–SJ–W.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Oct. 24, 1986.

See also, Bkrtcy., 52 B.R. 527.

David DeTar Newbert, Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Darold W. Jenkins, Independence, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE AND JUDGMENT DENYING THE DEFENDANTS' DISCHARGES IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

The plaintiff Farmers Home Administration seeks denial of the defendants' discharges in bankruptcy on the ground that they have failed to obey orders of the bankruptcy court within the meaning of section 727(a)(6)(A) of the Bankruptcy Code.[1] The

action came on for trial before the bankruptcy court on December 18, 1985, whereupon the plaintiff appeared by David DeTar Newbert, Esquire, Assistant United States Attorney, and the defendant Nellie Jane Richardson appeared personally and by counsel, Darold W. Jenkins, Esquire. The defendant Lyle DeWayne Richardson, although granted timely notice of the hearing, did not appear. The evidence which was then adduced demonstrated the existence of an extremely simple set of facts upon which basis the bankruptcy court is obliged to predicate its decision. On three separate occasions during the pendency of these title 11 proceedings, the defendants were directed to turn over to the plaintiff the proceeds from the sale of the 19 head of cattle which this court deemed to have been within the quantity of livestock in which the plaintiff had a valid and perfected security interest and of which they therefore had a right to reclamation. There can be no legitimate question of the clarity of the court's orders on any of these successive occasions. On the first occasion, the order issued by this court on April 15, 1985, was general in its description of the collateral to be turned over to the Farmers Home Administration, but there is no fair interpretation or construction of the order which could exclude the proceeds from the sale of the 19 head of cattle which are the subject matter of the complaint at bar. See *United States of America v. Richardson*, Adversary Action No. 85-0101-3 (Bkrtcy.W.D.Mo. April 15, 1985), to the following effect:

> "But the court has orally directed in the hearing of April 11, 1985, that the debtors bring their property together in one location, within 7 days of April 11, 1985, and notify the United States and the court in writing of any property which they are unable to consolidate in this manner. The property with respect to which lien avoidance is sought will be considered in the custody of the court

[1] Section 727(a)(6)(A) of the Bankruptcy Code provides that "(t)he court shall grant the debtor a discharge, unless ... the debtor has refused, in the case ... to obey any lawful order of the court."

until such time as the lien avoidance matter can be heard and determined. If the property is not located and made available to sight and inspection by the United States, this court must consider denial of discharge and other appropriate sanctions.

"The $6,847.00 proceeds of sale of the cattle must be turned over to the United States, subject to the claim of agister's lien which the debtors have no standing to raise. Once the proceeds have turned over to the United States, this court will, by means of a show cause order, commence proceedings to determine the validity and extent of the agister's lien, a matter which is fully within its jurisdictional powers. See section 157(b)(2)(K), Title 28, United States Code, to the effect that '[c]ore proceedings include.... determinations of the validity, extent, or priority of liens.' This order must be obeyed by the debtors within 15 days, or else the court must consider denial of discharge or the imposition of other sanctions, or both."

Thereafter, in the course of the efforts of the Farmers Home Administration to enforce the reclamation order, counsel for the debtors for the first time raised the defense that—as to the proceeds from the sale of the 19 head of calves which are the sole focus of the complaint at bar—these proceeds and the cattle, the sale of which created them, were used for the "living expenses" and "subsistence" of the debtors. Even at this juncture, however, the apparent "last-ditch" defense of the debtors—that the cattle were not in existence at the time of the filing of the bankruptcy ("in esse," as their counsel stated)—was not yet intelligibly raised. Even if it had have been raised, as this court pointed out in an order filed after it was initially raised, it was untimely, belatedly raised long after the court had initially issued its reclamation order and had observed in that order that the security interest of the Farmers Home Administration in fact included later-acquired property, offspring, and issue.[2] Otherwise, as section 552 of the Bankruptcy Code provides, a prepetition security interest in such postpetition proceeds, offspring, issue, or products continues to be effective unless the bankruptcy court orders otherwise.[3] And it was readily apparent that this court had not ordered otherwise. And, in its second order requiring turnover of the proceeds, that entered on June 21, 1985, the court denied the late-raised defenses and stated as follows:

*"Does the court's reclamation order of April 15, 1985, require the turnover by defendant to plaintiff of $3,842.79 in proceeds of sale of calves which the defendants now for the first time contend are within an exception to the security instrument for 'livestock ... kept pri-*

---

**2.** As is further pointed out below in the text of this memorandum, the court found in its order of June 21, 1986, that the evidence adduced in the hearing of June 20, 1986, "established a security interest in proceeds." And no question had been raised to the effect that the security interest applied to after-acquired property.

**3.** "Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement

and by applicable nonbankruptcy law except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." Section 552(b) of the Bankruptcy Code. Section 552(a) of the Bankruptcy Code otherwise provides generally that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." But the plaintiff had a security interest in "(a)ll livestock ... now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto," a description which should have covered the offspring of property in the form of cattle which was in existence at the time of the petition. And the defendants never did prove that the calves were not "in esse" at the time of filing. Only counsel's conclusionary statement was offered in this regard.

*marily for subsistence purposes?'* The court, under rules which govern pleading and proof in federal trials, is constrained to answer 'yes.' The minutes of the hearing of April 11, 1985, show that, in the course of the hearing, uncontradicted statements were offered to show that a security interest was claimed in the calves sold for the $3,842.79; that, at the conclusion of the hearing, counsel for plaintiff expressly requested reclamation of the $3,842.79; that the defense based on the 'subsistence' exception in the security agreement was not then raised; that the evidence offered in the hearing otherwise established a security interest in proceeds; and that the court's judgment of April 15, 1985 directed turnover of 'all of the cattle fairly described by the security agreement and financing statements,' which must be construed to include any and all proceeds *which were in existence as of the date of bankruptcy in the possession of the debtors.* This court agrees with the contentions of counsel for the plaintiff that the issue has been tried and determined. Further, it was demonstrated that there were chattels in the hands of the debtors as of the date of bankruptcy. It is an elemental prerequisite to a reclamation order that the plaintiff trace his security interest into property of the estate. *Matter of Mid-American Lines, Inc.,* 24 B.R. 52, 53 (Bkrtcy.W.D.Mo.1982). It is admitted that these calves, in fact, were sold after the date of bankruptcy. Under Rule 15(b), Fed.R.Civ.P., issues previously not pleaded but which are the subject of unobjected-to evidence at trial have been 'tried by implication.' The court's judgment of April 15, 1985, accordingly reaches the $3,842.79 and it must accordingly promptly be turned over to plaintiff. The belated defense now raised with respect to the 'subsistence' exception is not now cognizable. It is a factual defense on which evidence should have been offered in the hearing of April 15, 1985. 'It is fundamental that a final judgment by a court of competent juris-

diction is *res judicata* as to the parties thereto, and not only as to all matters litigated and determined by such judgment, but also as to all relevant issues which could habe been presented.' *Hudson v. North American Surety Co. of New York,* 377 F.2d 698, 699 (8th Cir. 1967)."

Still, however, the debtors refused to comply with the court's order, and the continued non-compliance resulted in the Farmers Home Administration's filing the objection to discharge at bar. Again, the debtors, in responding to the objection to discharge, elected not to obey the court's former orders, which were still in effect and unappealed, but rather now raised the untimely and untenable defense that the cattle were not *"in esse"* at the commencement of the bankruptcy case. The debtors also raised the defense that the chattels in question were no longer in their custody or possession; that they had been sold and the debtors had used them for living expenses; and that, when neither the chattels themselves or there proceeds were in existence, it was not possible for the debtors to comply with the court's reclamation orders. Admittedly, however, the the cattle were sold after the date of bankruptcy and after the duty of the debtors to account for these animals under the orders of this court came into existence.[4] The debtors also raised the defense—but solely by means of the conclusionary statements of counsel—that they currently had no funds with which to comply with the court's prior orders directing that the property or its proceeds be turned over to the plaintiff. But no real evidence supporting this contention was adduced. Rather, proof of the existence of this defense was left, as noted above, to the conclusionary statements of counsel. Finally—at least by strong implication—the debtors raised the defense of advice of counsel, pleading that they only heeded the advice of their counsel in refusing to obey the reclamation orders of the bankruptcy court.

**4.** See page 626 of the text of this memorandum, *supra.*

### Conclusions of Law

The relevant subsection of the Bankruptcy Code, section 727(a)(6)(A), makes it a ground for denial of discharge that debtors refuse to obey lawful orders of the bankruptcy court during the course of estate administration.[5] There can be little doubt, on the basis of the above findings of fact, that the debtors have violated the prior orders of this court and have done so repeatedly and deliberately. If a denial of discharge is not held to be appropriate in this action, it is difficult to imagine a case in which denial of discharge on this particular ground would be appropriate. The debtors' failure and refusal to turn over the subject chattels to the Farmers Home Administration was the equivalent of a contempt of court. See 4 Collier on Bankruptcy ¶ 727.09, p. 727–67 (15th ed.1985), to the following effect:

> "If the order is authorized in the words of, or by implication from, the statute, it is lawful. Contempt of court, provided the order ignored was lawful, becomes thus an available objection to discharge.... Under orderly procedure a turnover order by the court, unless the order is void (not merely erroneous) for want of power in the court, should be complied with at once or an appeal should be taken."

The defense that the chattels are now gone and that their proceeds are used up is unavailable under such circumstances. When property is taken from a bankruptcy estate [6] after the filing of a bankruptcy petition, the person taking that property is liable to the extent of his existing financial ability for the value of the property thus converted. See *South Falls Corporation v. Rochelle*, 329 F.2d 611, 619 (5th Cir. 1964), to the following relevant effect:

> "Had not the Bankrupt's dollar been transferred, South Falls would have parted with one of its own. That dollar would have come from its own cash or by liquidation of its ample assets. In effect, it now has a dollar, either in cash or property, which it would not have had but for the transfer of bankrupt funds. Of course, where the misappropriation is that of money, equitable concepts analogous to 'tracing' do not require identification of precise dollars as they go through various commercial mutations. The result is that Maggio now turns against South Falls. Turnover relief is proper, that case held, where '... existing chattels or their proceeds' are available. 333 U.S. 56, 63. Here the 'proceeds' of the cash are the remaining assets saved by this misappropriation of bankrupt funds. See also *May v. Henderson*, 1925, 268 U.S. 111, 119, 45 S.Ct. 456, 69 L.Ed. 870; *In re Livingston*, N.D.Calif., 1950, 93 F.Supp. 173, 175. To the full extent of such saving, the remaining assets or their subsequent mutations are available for compulsory turnover."

If it were sufficiently shown that the debtors were, at all relevant times subsequent to the order, unable to comply with turnover order, such might suffice as a full and adequate defense.[7] But there is no cognizable proof, for one thing, that the debtors have at any time lacked financial ability to pay the value of the chattels. As stated above, the debtors offered no evidence on this issue. Rather, they relied only on the wholly conclusionary statements of counsel. Further, at least at the outset, before the chattels were sold, the defendants clearly had the ability to grant reclamation to plaintiff. The fact that they did not do so, but instead sold the property and con-

---

**5.** See note 1, *supra*.

**6.** Even though the chattels were encumbered, they became part of the bankruptcy estate, subject to the Government's encumbrances. See sections 541 and 326 (providing that a trustee's compensation may be based on the value of wholly encumbered property) of the Bankruptcy Code.

**7.** In turnover or reclamation proceedings, the "order itself conclusively establishes ... the defendant's then ability to comply with the order. These matters may not be collaterally attacked in the contempt proceeding ... (in which) the only issue is the alleged contemner's present ability to comply." 2 Collier on Bankruptcy para. 23.10, pp. 586.1, 586.2 (14th ed.1976).

tinued—in the face of the existing reclamation order—to utilize the proceeds for their own benefit in itself shows a contumacious violation of the court's orders.

 Nor can it be said, under the circumstances of this action, that advice of counsel can be an availing defense. The law is well established to the effect that advice of counsel does not serve to excuse debtors from penalties for noncompliance with court orders when it is obvious that those orders should be complied with.[8] In this case, the orders were not only clearly made and in writing, they were not appealed and they were clarified and repeated. Neither the debtors nor their counsel[9] were privileged to question the court's orders in retrospect after they had permitted the time for directly appealing them to run out without challenging the orders.[10] The court is well warranted in entering the denial of the debtors' discharges in this action. Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that the defendants' discharges in bankruptcy be, and they are hereby, denied.

---

**8.** The conduct of counsel for the debtors in this case cannot be commended, but it cannot excuse the failure of the debtors to comply with the repeated orders of the court which clearly required that the property in question be turned over to the plaintiff. Advice of counsel is not a defense when it is transparently clear that the debtors have a duty to comply with the orders of the court. See, e.g., *In re Mascolo,* 505 F.2d 274, 277, n. 4 (1st Cir.1974).

**9.** See note 8, *supra.*

**10.** See note 7, *supra.*