**In re John W. CURRY and Edna T. Curry, Debtors.**

**No. 185–00233.**

United States Bankruptcy Court,
C.D. Illinois.

May 10, 1989.

Barry M. Barash, Galesburg, Ill., for debtors.

Robert H. Alvine, Moline, Ill., for creditor CONTINENTAL.

Richard Whitman, Monmouth, Ill., for creditor L.A. Seaton.

OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Prior to being forced to file a Chapter 11 proceeding in February of 1985, the Debtors had extensive farm holdings. Their intent through their plan of reorganization was to pare back their farming operation by liquidating 84 pieces of farmland and continuing to farm utilizing leased farmland. Their plan provided that unsecured

creditors were to be paid 1% per year for five years for a total of 5%.

Their plan was confirmed and they liquidated the excess farmland. During the years 1985, 1986, and 1987 they engaged in farming, generating net farm income of $10,111.00, $7,079.00 and $7,155.00 in each of those three years. When they were not able to make payments to certain secured creditors, they were required to return the farm machinery to the lien holders. Because they were not able to farm the leased farmland, they lost the leases and stopped farming. During those years, they failed to pay the unsecured creditors anything pursuant to the plan of reorganization. What income was generated was used for living expenses.

They now own 180 acres subject to a mortgage, help their son with his farming operation, and do a small amount of consulting.

One of their unsecured creditors, Wayne Feed, a division of Continental Grain Company (CONTINENTAL) filed a motion to have the Debtors' discharge revoked and set aside as to CONTINENTAL pursuant to Sections 1141 and 727 of the Bankruptcy Code, 11 U.S.C. Sections 1141 and 727. CONTINENTAL's position involves a three step argument. First, CONTINENTAL argues that under Section 1141(d), the confirmation of the plan discharged the Debtors from the debts that arose prior to the date of the confirmation, but that under Section 1141(d)(3)(C), confirmation did not discharge the Debtors if the Debtors would be denied a discharge under Section 727 if the case were a case under Chapter 7. CONTINENTAL then argues that under Section 727(d)(3) the court is required to revoke the discharge if the debtor committed an act specified in Section 727(a)(6). Finally, CONTINENTAL contends that the Debtors committed an act specified in Section 727(a)(6), in that the Debtors refused to obey a lawful order of the Court, which is a requirement found in Section 727(a)(6)(A). Specifically, the Debtors failed to pay unsecured creditors in accordance with the confirmation order.

One cannot quarrel with CONTINENTAL's analysis of the interaction between Section 1141 and 727. However, these sections are not applicable to the facts of this case. When a Chapter 11 plan is confirmed and the debtor fails to pay, the creditors' remedy is not to seek a revocation of the discharge, but rather to enforce the debtor's obligation to the creditor arising out of the Chapter 11 proceeding. In this case, CONTINENTAL's remedy is to sue to enforce the obligation to pay 5%. The history and rationale behind such a result is set forth in *In the Matter of The Stratton Group, Ltd.*, 12 B.R. 471 (Brktcy.S.D.N.Y. 1981) where the court stated:

Section 14(c) of the Bankruptcy Act of 1898, as then enacted, provided that the confirmation of a composition would discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition. In *Jacobs v. Fensterstock, supra* [236 N.Y. 39, 139 N.E. 772 (1923)] the New York Court of Appeals interpreted the phrase "those [debts] agreed to be paid by the terms of the composition" to mean the notes given on the composition. The composition thus acted as a settlement and discharge of the old debts. The promises made on the composition released the debtor and if they were not fulfilled, the remedy was only upon those promises. *Nordlinger v. Libow*, 136 Misc. 438, 240 N.Y. S. 193 (City Court 1930), citing *Jacobs v. Fensterstock*. See also *In re Kornbluth, supra* [65 F.2d 400 (2nd Cir. 1933)].

When the 1898 Act was amended to provide for Chapter XI arrangements, Section 371, 11 U.S.C. (1976 ed.) Section 771, was part of the Chapter XI scheme and was the analogue, therefore, of Section 14(c) of the 1898 Act which had no Chapter XI provisions until 1938. By incorporating language from Section 14(c) into Section 371, it may be presumed that Congress was aware of the prior judicial interpretation of the statute. *Leist v. Simplot*, 638 F.2d 283 (2d Cir.1980). And when a statute is reenacted without substantial change, Congress is presumed to have adopted that

judicial interpretation. *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1977).

Thus, when Congress, in Section 371, defined the confirmation discharge to release the rehabilitated debtor from all his unsecured debts provided for by the plan, Congress gave meaning to its policy of affording debtors rehabilitation and a fresh start. Confirmation fixes the reach of claims that are allowed and that the debtor treats in the plan. Where the debtor effects a composition, he is relieved of his old debts and simply has the burden of achieving the promises made in the composition. The composition thus operates as an absolute settlement, and the failure to pay unpaid obligations created by the plan will not revive the old debts. *Jacobs v. Fensterstock, supra,* citing *In re Mirkus,* 289 F. 732 (2d Cir. 1923). In the composition plan, the creditor receives what he bargained for there and has no right to claim more. *In re Lane,* 125 F. 772 (D.C.Mass.1902). There is nothing in the Act to suggest that the debtor's failure to achieve promises made in a confirmed plan reinstates an original obligation. *In re Setzler,* 73 F.Supp. 314 (D.C.Cal.1947). It would take a much clearer expression by Congress to enforce a policy wherein a debtor who unsuccessfully attempts to rehabilitate himself and benefit his creditors through a confirmed plan finds himself obligated for the original amount of the debts, whereas a straight bankrupt is discharged of all his obligations. (Footnote omitted).

Although the *Stratton* case is decided under the Bankruptcy Act, its holding is equally applicable to Section 1141 of the Bankruptcy Code.

In support of its position, CONTINENTAL further argues that a grave injustice will occur if the discharge is not revoked in that the Debtors will have received the benefit of a discharge without having to liquidate assets or having a trustee look over the Debtors' shoulders to see if non-exempt assets could have been used to satisfy creditors' claims. There is a two-fold answer to this position. First, CONTI-NENTAL was given an opportunity to present evidence in support of its motion and no evidence was submitted which indicated that the Debtors in any way are retaining assets that should have been liquidated for the benefit of creditors. But even if that were the case, CONTINENTAL is raising the issue at an inappropriate time. The time to raise this kind of issue would have been prior to confirmation. If CONTINENTAL thought that it could have gotten more through a liquidation of assets, it should have been raised so that the Bankruptcy Judge could have considered this position pursuant to the confirmation standards of Section 1129.

In support of its position, CONTINENTAL relies on *In re Richardson,* 67 B.R. 624 (Bkrtcy.W.D.Mo.1986); *In re Sweigard,* 35 B.R. 676 (Bkrtcy.N.D.Ohio 1983); *In re Dowell,* 61 B.R. 75 (Bkrtcy.W.D.Mo. 1986). While it is true that as a general proposition a Bankruptcy Court has the authority to revoke a discharge for failure to comply with its order, none of these cases have any application here. *In re Sweigard* was a case where the debtors' Chapter 11 was converted to a Chapter 7 and the discharge was revoked because the debtor failed to turn over to the plaintiff certain monies that were due the debtor from a third party, pursuant to a stipulated judgment entered to satisfy a complaint for relief from the automatic stay. *In re Dowell* involves revoking a discharge for failure to comply with the judge's order directing the debtor to file a statement of affairs and schedules. *In re Richardson* was a Chapter 11 case where the debtor's discharge was revoked for failure to obey the bankruptcy court's lawful reclamation order, directing the debtor to turn over to the creditor proceeds from the sale of certain cattle.

For these reasons, CONTINENTAL's request that the Debtors' discharge be revoked as to the debt owed CONTINENTAL, be and the same is hereby DENIED.