In re JORDAN MANUFACTURING COMPANY, INC., Debtor.

In re Phillip R. BUCHEN and Mary Jane Buchen, Debtors.

In re Kenneth L. DEAN and Nina S. Dean, Debtors.

In re Robert F. JACKSON and Ruth E. Jackson, Debtors.

In re DICKENS CONSTRUCTION COMPANY, INC., Debtor.

In re C.S. NORCROSS, INC., Debtor.

In re COOMER FARMS, a partnership, Clarence R. and Betty L. Coomer, Randall L. Coomer and Mary J. Coomer, Debtors.

In re G. LARSON AND SONS FARMS, INC., Debtor.

Bankruptcy Nos. 185–01473, 86–80396, 185–00139, 87–80358, 87–82591, 88–81781, 87–80172, 88–80473, 88–80474, 185–01665.

United States Bankruptcy Court, C.D. Illinois.

March 30, 1992.

Barry M. Barash, Galesburg, Ill., for debtors Jordan Mfg. Co., Inc., Phillip R. and Mary Jane Buchen, Kenneth L. and Nina S. Dean, Robert F. and Ruth E. Jackson, Dickens Const. Co., Inc., C.S. Norcross, Inc., Coomer Farms, a partnership, Clarence R. and Betty L. Coomer, Randall L. Coomer and Mary J. Coomer.

Gregg N. Grimsley, Stephen A. Kouri, Peoria, Ill., for Norell Corp. Creditor, Jordan Mfg. Co., Inc., Tompkins State Bank, Creditor, Phillip and Mary Jane Buchen, Farmers Nat. Bank of Geneseo, Creditor, Dickens Const. Co. Inc., First State Bank of Princeton, re: Coomer Farms.

Donald L. Dorward, Washington, Ill., for International Minerals & Chemical Corp., Creditor, Kenneth L. and Nina S. Dean.

Archie Lawrence, Asst. Atty. Gen., Springfield, Ill., for State of Ill., creditor, re: Robert F. and Ruth E. Jackson; and Dickens Const. Co., Inc.

Lawrence J. Kwacala, Macomb, Ill., for Union Corp., re: C.S. Norcross.

Raymond M. Forster, Washington, D.C., for creditor, Pension Ben. Guar. Corp., re: C.S. Norcross, Inc.

Dean L. Sutton, Lytton, Lytton & Sutton, E. Moline, Ill., for debtor, G. Larson & Sons Farms.

Donald L. Robinson, Peoria, Ill., for Aetna Fin. Co., re: G. Larson & Sons Farms.

U.S. Trustee, Peoria, Ill.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

In all the following Chapter 11 proceedings, the Debtors have filed motions for final decrees pursuant to Section 350 of the Bankruptcy Code, 11 U.S.C. Section 350, and current Rule 3022 of the Bankruptcy Rules, and some of their creditors have objected.

In *In re Jordan Manufacturing*, No. 185–01473, the Debtor is in default under the plan as to the creditor, Norell Corporation. The other creditor, Pioneer Park One, is being paid, there is no default un-

der the plan, but $9,300.00 is still due the creditor under the plan. These creditors object on the same grounds as those raised in *In re Buchen*.

In *In re Buchen*, No. 86–80396, the Debtor is current with the plan payments to the creditor, Tompkins State Bank, but $3,640.00 is still due the creditor under the plan. The creditor objects on the following grounds:

1. Under Section 350 of the Bankruptcy Code and prior bankruptcy Rule 3022, a final decree was not entered until "after an estate is fully administered" and to be in compliance with prior Bankruptcy Rule 3022 the debtor submitted to the court a confirmation order which retained jurisdiction in the court "until all claims have been paid in full" and "after the debtors successfully complete the plan".

2. The current Rule 3022 should not be applied retroactively. Creditors voted based on the language of the plan and a final decree should not be entered until fully paid and in light of the then existing law.

3. If default occurs, the creditor would be limited to a state court action to collect the reduced amount due under the plan.

4. If default occurs the creditor is not sure if it would be limited to the amount of the payment missed or the entire amount due.

In *In re Dean*, No. 185–00139, an unsecured creditor, International Minerals & Chemicals Corporation, objects on the grounds that none of the payments to the unsecured creditors of 10% per year for 10 years have been made.

In *In re Jackson*, No. 87–80358, the creditor, The Illinois Department of Revenue, objects that its claim of $650.00 for withholding taxes has not been paid.

In *In re Dickens Construction Company, Inc.*, No. 87–82591, the debtor is current in its payments to the creditor, the Farmers National Bank of Geneseo, but there are eight quarterly payments of $875.00 each still due. The creditor makes the same objections as in *Buchen*. Another creditor, the Illinois Department of Revenue, objects to the entry of a final decree until all plan payments are made.

In *In re Norcross*, No. 88–81781, (Norcross # I) the debtor made some payments, but is in default as to others and the plan has not run its course. Twenty-one months after confirmation the debtor filed a second Chapter 11 proceeding *In re Norcross*, No. 91–81169, (Norcross # II). A creditor, Union Corporation, objects, asserting the Debtor is estopped to claim Norcross # I is fully administered.

In *In re Coomer*, No. 87–80172, the creditor, The First State Bank of Princeton, objected on the grounds that although payments under the plan are current, there are amounts due to unsecured creditors which have to be paid under the plan.

In *In re G. Larson & Sons*, No. 185–01665, the debtor is in default to the creditor, Aetna Finance, on a loan secured by a mortgage on real estate and first and second liens on equipment. The plan provided for a drop dead clause and the creditor has exercised the provision and has recorded a deed. Title to the real estate now is in the creditor, which the creditor is trying to sell. The creditor asserts it may need the jurisdiction of this Court to obtain possession of the real estate or the equipment, although it acknowledges the state courts are available for this purpose.

As a preliminary observation, it is noted that all these Chapter 11 proceedings were filed during the years of 1985 to 1988. The last year any of the Chapter 11 proceedings were confirmed was 1989. During this period, and to date, Section 350 remained unchanged and provided as follows:

Closing and reopening cases.

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

During this period, Bankruptcy Rule 3022 provided as follows:

After an estate is fully administered, including distribution of any deposit re-

quired by the plan, the court shall enter a final decree (1) discharging any trustee if not previously discharged and cancelling the trustee's bond; (2) making provision by way of injunction or otherwise as may be equitable; and (3) closing the case.

However, in 1991, Bankruptcy Rule 3022 was amended to read as follows:

> After an estate is fully administered in a Chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

Thereafter in 1991 the debtors requested their final decrees pursuant to current Bankruptcy Rule 3022.

The first objection to be considered raises the issue of which version of Bankruptcy Rule 3022 is applicable to the issuance of final decrees in these proceedings. Should current Bankruptcy Rule 3022 be applied retroactively to these confirmed Chapter 11 proceedings?

As a general rule, an amendment will be applied retroactively, absent express statutory language to the contrary, where the amendment relates only to remedies or procedures and where retroactive application would not destroy a substantive right. *Ambrosino v. Rodman & Renshaw, Inc.*, 635 F.Supp. 968 (N.D.Ill.1986); *see also Central Freight Lines, Inc. v. United States*, 669 F.2d 1063 (5th Cir.1982). This general rule is embodied in the directive of the Supreme Court, concerning the application of the 1991 amendments to the Rules of Bankruptcy Procedure:

> [T]he foregoing additions and amendments to the Bankruptcy Rules shall take effect August 1, 1991 and shall govern all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings in bankruptcy cases then pending.

Thus, the current rule will apply to these cases if its application is "just and practicable."

In *In re Stroop*, 47 B.R. 986 (D.C.Colo.1985), the court considered the issue of whether application of an amend-

ment to the Bankruptcy Code to a pending case would result in manifest injustice. The court identified the following three factors to be considered:

1) the nature and identity of the parties;
2) the nature of the rights affected; and
3) the impact of the change in law on pre-existing rights.

The first factor, involving the status of the parties, has no impact where the dispute is a routine one between private parties, as is the case here. The second factor concerns whether the rights involved have matured or become unconditional. Noting that the right at issue in *Stroop* was more a procedural remedy than a substantive right, the court stated that absent manifest injustice, no one has a vested right in a given mode of procedure. In the cases before this Court, the entry of a final decree under Bankruptcy Rule 3022 is procedural in nature as it involves the "ministerial act" of closing a case after it is fully administered. B. Weintraub and J. Crames, Defining Consummation, Effective Date of Plan of Reorganization and Retention of Post Confirmation Jurisdiction, Suggested Amendment to Bankruptcy Code and Bankruptcy Rules, 64 Am.Bankr.L.J. 245 (Summer, 1990). The entry of a final decree does not alter the substantive rights of either the creditors or the debtors which are controlled by the Bankruptcy Code. The third aspect focuses upon any injury to pre-existing rights caused by the change in the law. As in *Stroop*, the amendment to Rule 3022 will have no impact on any pre-existing rights of the creditors in these cases. Therefore, because the application of the current Rule 3022 is "just and practicable" it should be applied to these cases.

There is another reason why it should be applied. The effect of the prior Bankruptcy Rule 3022 and the current Bankruptcy Rule 3022 are the same. Although the wording of the two versions of Rule 3022 is slightly different, in the context of these cases, both versions of the Rule provide "After an estate is fully administered ... the court shall enter a final decree closing the case." The only difference between the two versions of the Rule is that the

previous version specifically referred to additional relief involving the discharge of a trustee and equitable relief, and the amended version refers to a party in interest seeking a final decree. *See* 8 *Collier on Bankruptcy,* para. 3022.03 (15th ed. 1991).

Support for this Court's conclusion that the effect of the Rules is the same can be found through an examination of Sections 1127(b) and 1101(2) of the Bankruptcy Code, 11 U.S.C. Sections 1127(b) and 1101(2), and former Bankruptcy Rule 2015. Section 1127(b) prevents modification of a confirmed plan once it is substantially consummated. Section 1101(2) defines "substantial consummation" to mean—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

Prior to its latest amendment, Bankruptcy Rule 2015 provided in part as follows:

(a) Trustee or Debtor in Possession. A trustee or debtor in possession shall

. . . .

(6) within 30 days after the date of the order confirming a plan or within such other time as the court may fix, file a report with the court concerning the action taken by the trustee or debtor in possession and the progress made in the *consummation* of the plan and file further reports as the court may direct until the plan has been consummated;

(7) after *consummation* of a plan, file an application for a *final decree* showing that the plan has been consummated, and the names and addresses, if known, of the holders of claims or interests which have not been surrendered or released in accordance with the provisions of the plan and the nature and amounts of claims or interests, and other facts as may be necessary to enable the court to pass on the provisions to be included in the final decree. (Emphasis added.)

As previously noted, both versions of Bankruptcy Rule 3022 direct that a case be closed after the estate is fully administered. Construing all these provisions together, a clear direction appears as to how a debtor is to emerge from a Chapter 11 proceeding. Under Sections 1127(b) and 1101(2), once a debtor has transferred its property and its management and has started distributions, it can no longer modify its confirmed plan and it is to take steps under Bankruptcy Rule 2015, to apply for a final decree, the issuance of which is governed by Bankruptcy Rule 3022.[1]

The current Bankruptcy Rule 3022 does not change that direction. Sections 1127(b) and 1101(2) remain unchanged. One of the changes to prior Bankruptcy Rule 3022 is

---

**1.** In *In re Terracor,* 86 B.R. 671 (D.Utah, 1988), the court sought to draw a distinction between "substantial consummation" and "Consummation" of a plan. In so doing, the court relied upon the following factors set forth by the court in *In re Tri–L Corp.,* 65 B.R. 774 (Bkrtcy.D.Utah 1986), leading to "consummation" of a plan: (1) Presenting the order of confirmation; (2) Insuring that the notice of confirmation is sent to creditors; (3) Distributing the deposit or other moneys to be disbursed upon confirmation; (4) Objecting to claims and preparing a final list of creditors and interest holders in each class; (5) Preparing and filing a final account of the administration of the estate; (6) Preparing necessary documents, if needed, to transfer the assets of the debtor corporation to the reorganized corporation or any entity receiving assets under the plan; (7) Preparing the corporate documents, if needed, to form the reorganized entity, to complete any merger or consolidation, or to complete any other transaction contemplated under the plan; (8) Preparing pleadings, if necessary, to erase or modify liens in accordance with the plan; (9) Filing reports with the court concerning the action taken by the debtor and the progress made in the consummation of the plan; (10) Substantially consummating the plan; (11) Filing any modifications to the plan after confirmation, if necessary (but not after substantial consummation); and (12) After completion of all matters and after substantial consummation, moving the court for a final decree and closing the case.

If, as characterized by the authors in the article cited above, consummation of the case is only a "whisper" away from closing the case, then "substantial consummation" is but a breath shy of "consummation." In this Court's view, for practical purposes, the terms can be viewed as synonymous.

that the current version gives any party in interest the right to seek a final decree. The Advisory Committee notes to current Bankruptcy Rule 2015 are clear that previous Bankruptcy Rule 2015(6) and (7) are abrogated as unnecessary and the closing of a Chapter 11 case is governed by current Bankruptcy Rule 3022. The Advisory Committee Notes to current Bankruptcy Rule 3022 incorporate the standard of substantial consummation found in Section 1101(2) for determining whether the estate has been fully administered and a final decree should issue:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) *whether the property proposed by the plan to be transferred has been transferred*, (4) *whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan*, (5) *whether payments under the plan have commenced*, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved. (Emphasis added.)

In sum, though the 1991 Amendments to the Bankruptcy Rules of Procedure effected minor changes in Rules 2015 and 3022, their effect remains the same.

In conclusion, the first objection is denied because current Bankruptcy Rule 3022 can be applied retroactively, and because, as applied to each case, there is no effective difference between the two versions of the Rule.

The starting point for the remaining objections is the Advisory Committee notes to the current Bankruptcy Rule 3022 which states a bankruptcy court, in determining if an estate has been fully administered, should consider the six factors previously set forth. At the hearing on the Debtors' motions, the creditors did not contest the Debtors representations that the Debtors had complied with these factors. However, these factors are not exclusive, and the creditors' remaining objections are based on the additional factors discussed below, which this Court concludes are inappropriate to delay entry of the final decrees.

■ The next objection to be considered is that the debtors are bound by the language of the confirmation orders, and that a final decree should not be issued in those cases where the confirmation order provided this Court was to retain jurisdiction "until all claims have been paid in full" and "after the debtors successfully complete the plan." The essence of this objection is that the creditors want this Court to retain jurisdiction until they are paid. Initially it is noted that, with one exception, the objections do not specify the nature and extent of this Court's post confirmation jurisdiction which the creditors want this Court to retain. Furthermore, it is fundamental that parties in interest in a bankruptcy proceeding, through their actions, cannot confer jurisdiction on the Bankruptcy Court which is otherwise lacking. *In re Roger J. Au & Son, Inc.*, 123 B.R. 31 (Bkrtcy.N.D.Ohio (1990)); *In re Almarc Corp.*, 94 B.R. 361 (Bkrtcy.E.D.Pa.1988). If jurisdiction is present, the Advisory Committee Notes to the current Bankruptcy Rule 3022 make it quite clear that the entry of a final decree should not be delayed because the bankruptcy court's jurisdiction might be required in the future and that the entry of a final decree does not deprive the bankruptcy court of jurisdiction, stating:

> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to Section 350(b) of the Code.

Before leaving the topic of jurisdiction, one last point needs to be made. Questions of jurisdiction are distinct from questions of entry of final decrees and should be considered separately. At this point in time, nothing in this opinion should be construed as impacting any jurisdictional issue

which might subsequently come before this Court.

■ For the purposes of this opinion, the next two objections can be taken together. The first is that even though some of the Debtors haven't defaulted under their plans, a final decree should not be entered as there might be defaults in the future. The Advisory Committee Notes to the current Bankruptcy Rule 3022 clearly indicate final decrees should be entered in this situation, as the notes state:

Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed.

The second is that some of the final decrees should not be entered because the Debtors have defaulted under their plans. Apparently the creditors want to be able to resort to this Court to remedy the defaults. As a later portion of this opinion indicates, the scheme of a Chapter 11 proceeding is to get a debtor reorganized and out from under the protection of the bankruptcy court. So the question is presented: What happens if a debtor defaults under a confirmed plan. The answer is that a creditor may resort to Section 1112(b) of the Bankruptcy Code, 11 U.S.C. Section 1112(b), which permits conversion to Chapter 7 or dismissal [2] or may resort to state court but may not resort to the bankruptcy court to collect an individual obligation arising out of a reorganization.

This Court's conclusion that a creditor can resort to Section 1112(b) starts with what this Court perceives to be a clear message from the United States Supreme Court in recent cases that in construing federal legislation, the lower courts should consider Congress to have said what it meant, and meant what it said. The next step is to ascertain what Congress said in drafting Section 1112(b). As the following portions of Section 1112(b) indicate, Congress in drafting that section did not divide that section into pre and post confirmation

situations, but lumped them into a single section giving the court the right to convert or dismiss. That section in pertinent part reads as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

. . . .

(2) inability to effectuate a plan;

. . . .

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

. . . .

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; [3]

■ This Court recognizes that Section 1112(b) could present strategic decisions for debtors or creditors and additional issues could arise in the event of a conversion or a dismissal. But a request for either is not before this Court, and at this stage this Court can only rely on what Section 1112(b) says, and anticipate that whether a Chapter 11 will be converted or dismissed will depend on what relief is requested and what relief is appropriate in a particular Chapter 11 proceeding. One thing does seem certain, if a court has the authority to convert or dismiss for a material default post confirmation, jurisdiction is not lost by the entering of a final decree.

A bankruptcy court has a third option under Section 1112(b). That section is not mandatory in requiring conversion or dismissal. It provides the court "may" do either. So a bankruptcy court could elect to do neither, and leave the creditor with its state court remedies.

---

**2.** In those cases where a debtor has defaulted in payment under the plan, none of the creditors have seen fit to seek that relief.

**3.** This Court has merely selected certain subsections of Section 1112(b) to make its point that Section 1112(b) encompasses both pre and post confirmation situations.

The other remedy is for a creditor to resort to state court remedies, bypassing the bankruptcy court completely. In *In re Curry*, 99 B.R. 409 (Bkrtcy.C.D.Ill.1989), this Court had before it the issue of whether a debtor should have his discharge revoked for defaulting under his plan, and stated:

When a Chapter 11 plan is confirmed and the debtor fails to pay, the creditors' remedy is not to seek a revocation of the discharge, but rather to enforce the debtor's obligation to the creditor arising out of the Chapter 11 proceeding. In this case, CONTINENTAL's remedy is to sue to enforce the obligation to pay 5%. The history and rationale behind such a result is set forth in *In the Matter of The Stratton Group, Ltd.*, 12 B.R. 471 (Bkrtcy.S.D.N.Y.1981) where the court stated:

Section 14(c) of the Bankruptcy Act of 1898, as then enacted, provided that the confirmation of a composition would discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition. In *Jacobs v. Fensterstock, supra* [236 N.Y. 39, 139 N.E. 772 (1923)] the New York Court of Appeals interpreted the phrase "those [debts] agreed to be paid by the terms of the composition" to mean the notes given on the composition. The composition thus acted as a settlement and discharge of the old debts. The promises made on the composition released the debtor and if they were not fulfilled, the remedy was only upon those promises. *Nordlinger v. Libow*, 136 Misc. 438, 240 N.Y.S. 193 (City Court 1930), citing *Jacobs v. Fensterstock*. See also *In re Kornbluth, supra* [65 F.2d 400 (2nd Cir. 1933)].

When the 1898 Act was amended to provide for Chapter XI arrangements, Section 371, 11 U.S.C. (1976 ed.) Section 771, was part of the Chapter XI scheme and was the analogue, therefore, of Section 14(c) of the 1898 Act which had no Chapter XI provisions until 1938. By incorporating language from Section 14(c) into Section 371, it may be presumed that Congress was aware of the prior judicial interpretation of the statute. *Leist v. Simplot*, 638 F.2d 283 (2d Cir.1980). And when a statute is reenacted without substantial change, Congress is presumed to have adopted that judicial interpretation. *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978).

Thus, when Congress, in Section 371 defined the confirmation discharge to release the rehabilitated debtor from all his unsecured debts provided for by the plan, Congress gave meaning to its policy of affording debtors rehabilitation and a fresh start. Confirmation fixes the reach of claims that are allowed and that the debtor treats in the plan. Where the debtor effects a composition, he is relieved of his old debts and simply has the burden of achieving the promises made in the composition. The composition thus operates as an absolute settlement, and the failure to pay unpaid obligations created by the plan will not revive the old debts. *Jacobs v. Fensterstock, supra*, citing *In re Mirkus*, 289 F. 732 (2d Cir. 1923). In the composition plan, the creditor receives what he bargained for there and has no right to claim more. *In re Lane*, 125 F. 772 (D.C.Mass.1902). There is nothing in the Act to suggest that the debtor's failure to achieve promises made in a confirmed plan reinstates an original obligation. *In re Setzler*, 73 F.Supp. 314 (D.C.Cal.1947). It would take a much clearer expression by Congress to enforce a policy wherein a debtor who unsuccessfully attempts to rehabilitate himself and benefit his creditors through a confirmed plan finds himself obligated for the original amount of the debts, whereas a straight bankrupt is discharged of all his obligations. (Footnote omitted).

In *Pettibone Corporation v. Easley*, 935 F.2d 120 (7th Cir.1991), the court in discussing the effects of confirmation, stated:

Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy

court. It may not come running to the bankruptcy judge every time something unpleasant happens. *In re Xonics, Inc.*, 813 F.2d 127, 130–32 (7th Cir.1987); *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1186–87 (7th Cir.1986). See also *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984); *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232–33 (4th Cir.1987); *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir.1986); *In re Gardner*, 913 F.2d 1515, 1518–19 (10th Cir. 1990). Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law, here by pleading the statute of limitations in the pending cases.

Finally, in *In re Depew*, 115 B.R. 965 (Bkrtcy.N.D.Ind.1989), the court also had the opportunity to discuss the effects of confirmation, stating:

> Following confirmation, the reorganized debtor is required to use its property and resources to fulfill the confirmed plan and must make the payments to creditors that the plan requires. *In re Barker Medical Co., Inc.*, 55 B.R. 435, 436 (Bankr.M.D.Ala.1985); [*In re*] *Air Center, Inc.*, 48 B.R. [693] at 695 [Bankr. Okl.1985]. The failure to perform these obligations does not, however, revive the original, pre-petition debt. *Mirkus*, 289 F. 732. *Matter of Stratton Group, Ltd.*, 12 B.R. 471, 474 (Bankr.S.D.N.Y.1981). Neither does the default justify revocation of the order of confirmation, *In re Isidor Klein, Inc.*, 22 F.2d 906, 908 (2nd Cir.1927); [*In re*] *Errington*, 39 B.R. [968] at 971 [Bankr.D.Minn.1984], or the discharge that accompanied it. *In re Curry*, 99 B.R. 409 (Bankr.C.D.Ill.1989). Instead, the creditor's remedy is to enforce the obligations contained in the confirmed plan. *Curry*, 99 B.R. at 410; [*In re*] *American Properties*, 30 B.R. [247] at 246 [Bankr.D.Kan.1983].
>
> With confirmation, the automatic stay is generally terminated. [*In re*] *Herron*,

60 B.R. [82] at 84 [Bankr.W.D.La.1986]; [*In re*] *Balogun*, 56 B.R. [117] at 119 [Bankr.M.D.Ala.1985]; [*In re*] *Ernst*, 45 B.R. [700] at 702–03 [Bankr.D.Minn. 1985]. Creditors are freed from the restrictions of Section 362(a) and, in the event of a default following confirmation, are entitled to file suit in an appropriate forum based upon the terms of the plan, in order to enforce those terms just as they would any other agreement. *Curry*, 99 B.R. at 410; *Balogun*, 56 B.R. at 119; *Ernst*, 45 B.R. at 702. This remedy gives creditors the opportunity to enforce their right to receive just what they bargained for in the confirmed plan—there is no right to claim anything more. *Stratton Group, Ltd.*, 12 B.R. at 474.

In those Chapter 11 proceedings where the debtors have defaulted in payment, creditors have remedies under either the Bankruptcy Code or state law. They have to decide what problems they face under those remedies and which remedy is in their best interests to seek. They have not elaborated as to how, if at all, their remedies would be adversely affected should final decrees be entered.

■ The next objection is based upon the creditors' uncertainty over whether a suit in state court would be for just the payment(s) in default or the total amount due. The general non-bankruptcy rule is that where a debtor defaults on an installment obligation which does not contain an acceleration clause, the creditor must pursue each installment without accelerating the total obligation. *Biehl v. Atwood*, 151 Ill.App.3d 763, 104 Ill.Dec. 574, 502 N.E.2d 1234 (5th Dist.1986). If the objecting creditors have a problem, it should have been addressed at the confirmation hearing by objecting to the plan and seeking an acceleration provision. Having failed to do so, they are bound by the terms of the new obligations arising out of the confirmed plans, and they must accept whatever procedural problems they might encounter in attempting to enforce those obligations in the appropriate forum.

A variation of two previous objections is found in the creditor's objection in *In re G. Larson & Sons,* where the creditor contends the Debtor is in default and jurisdiction of this Court may be needed to recover possession of the real estate or the equipment. This objection is likewise ill conceived as (1) the creditor acknowledges the state court is available to it for this purpose, and (2) if this Court has jurisdiction to aid the creditor in recovering possession of the property, it is not lost by entry of a final decree.[4]

■ There is one last objection raised by the creditor, Union Corporation, in *Norcross # I,* which needs to be addressed. In that proceeding the creditor asserts because of the following acts the debtor is estopped to claim the plan is fully administered. In *Norcross # I* the Debtor's plan was confirmed in August of 1989. Then in February of 1990 the Debtor filed a motion to modify the confirmed plan. In that motion the Debtor alleged that the plan had not been substantially consummated and pursuant to Section 1127(b), 11 U.S.C. Section 1127(b), sought to amend the plan to modify the payments going to the creditor.[5] This modification was not opposed by the creditor. The creditor now argues that at the time the order for modification was entered, the Debtor asserted to this Court that the plan had not been substantially consummated and when the Debtor filed its motion for a final decree there has not been a substantial change in that regard, as many of the payments listed in Debtor's Brief were made prior to the order confirming the modified plan. The creditor does not identify whether it is relying on equitable estoppel or judicial estoppel. Therefore, both theories will be considered.

■ The elements necessary to prove equitable estoppel are:

1. words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts;

2. the party against whom estoppel is alleged must have had knowledge at the time the representations were made that they were untrue;

3. the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time the representations were made and at the time that they were acted on by him;

4. the party estopped must intend or reasonably expect that his conduct or representations will be acted upon; and

5. the party claiming the benefit of the estoppel must have in good faith relied upon the representation to his detriment. *Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988).

In its motion filed on April 5, 1990, the creditor contended that the confirmed plan of C.S. Norcross had been substantially consummated. Prior to a hearing, and for whatever reason, Union agreed to an order confirming the amended plan. Thus, Union abandoned its position that the confirmed plan had been substantially consummated. But, even if Union had relied on a misrepresentation of the Debtor, it has shown no prejudice resulting therefrom.

■ As the court noted in *In re Neptune World Wide Moving, Inc.,* 111 B.R. 457 (Bkrtcy.S.D.N.Y.1990), the doctrine of judicial estoppel is distinct from equitable estoppel, and "looks to the connection between the litigant and the judicial system, whereas equitable estoppel focuses on the relationship between the parties." Quoting from *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.1990), the court stated:

Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. *Edwards v. Aetna Life Inc. Co.,* 690 F.2d 595, 599 (6th Cir.1982). It is to be applied where "intentional self-

---

**4.** Subsequent to the filing of the objection, and while this matter was under advisement, the creditor filed an adversary complaint, Case No. 92–8024, seeking a turnover of the equipment. As of the date of this Opinion, the Debtor filed an answer and affirmative defense and the mat- ter has been set for pretrial conference on May 12, 1992.

**5.** If the plan had been substantially consummated, Section 1127 prevents any amendment.

contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice," *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953), to prevent litigants from "playing fast and loose with the courts." *Id.* "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895).

As the court in *Cassidy* noted, the doctrine is intended to protect the courts rather than the litigants. In order for judicial estoppel to apply, the party to be estopped must have convinced the court to accept its position in the prior proceeding, i.e. he must have prevailed on a disputed issue. *In re Klein*, 1991 WL 237841, 1991 U.S.Dist. LEXIS 16096 (N.D.Ill. Oct. 31, 1991). As previously noted, the modified plan was agreed to by the creditors and this Court perfunctorily entered an order confirming the modified plan. In this Court's view, Norcross #1, in seeking a final decree, is not playing "fast and loose" with the Court. In *Astor Chauffeured Limousine Co. v. Runnfeldt Invest. Corp.*, 910 F.2d 1540 (7th Cir.1990), the court identified the evil to which the doctrine of judicial estoppel is directed, stating:

> The offense is not taking inconsistent positions so much as it is winning, twice on the basis of incompatible positions.

The application of the doctrine of judicial estoppel would not be appropriate here. The issue before the Court is a simple, procedural one involving the issuance of a final decree and the closing of the case. As this Court has concluded, no substantive rights of the parties will be affected by the taking of that administrative step.

In conclusion, as the factors set forth in the Advisory Committee Notes to current Bankruptcy Rule 3022 are not contested and the other factors which form the basis of the creditors' objections do not indicate any reason not to enter final decrees, final decrees should be entered. For a similar result, *see In re Mold Makers, Inc.*, 124 B.R. 766 (Bkrtcy.N.D.Ill.1990), where the bankruptcy court entered a final decree, over the objection of the U.S. Trustee, even though everything required by the confirmed plan had not been completed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.