HALIL PUSKAR *et al.*, Indiv. and as Officers, Directors and Shareholders of American Eagle Manufacturing Company, Inc., Plaintiffs-Appellees and Counterdefendants, v. DAVID E. HUGHES *et al.*, Defendants-Appellants and Counterplaintiffs.

Second District   No. 2—88—0269

Opinion filed January 13, 1989.—Rehearing denied February 16, 1989.

Elizabeth L. Krueger, P.C., of Wheaton (Kevin F. Lynch, of counsel), for appellants.

Trent, Levato & Kotche and Douglas P. Trent, of Law Office of Douglas P. Trent, both of Wheaton, and Nigro & Westfall, of Glendale Heights (James W. Hathaway, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Halil and Tahira Puskar, brought suit in the circuit court of Du Page County seeking, alternatively, specific performance or damages for the breach of a contract for the sale of a corporation to defendants, David and Charles Hughes. David Hughes filed a counterclaim seeking rescission of the contract and return of monies paid thereunder. Following a bench trial, the circuit court granted rescission of the agreement, offsetting against the return of the consideration tendered by defendants under the contract sums that the court found defendants owed to plaintiffs, and entered judgment in favor of plaintiffs in the amount of $3,640.

David and Charles Hughes were represented by separate counsel at trial. While both filed a notice of appeal, Charles Hughes has failed to prosecute his appeal and therefore his appeal is dismissed. Only

David Hughes is a party to the instant appeal.

David Hughes raises the following issues on appeal: (1) whether the circuit court erred in finding that defendants owed plaintiffs certain sums after the court rescinded the contract; (2) whether the circuit court erred in assessing these sums based on the evidence adduced; and (3) whether the circuit court erred in granting relief to plaintiffs who had unclean hands.

Evidence adduced at trial establishes the following facts. On July 14, 1986, plaintiffs and defendants executed a written agreement for the sale of American Eagle Manufacturing Co., Inc. (American Eagle), a corporation of which plaintiffs were the sole shareholders, to defendants.

The agreement for the sale of American Eagle provided that defendants were to make a down payment of $100,000 upon execution of the agreement, to be followed by a final payment of $436,000 within 90 days of execution. As additional consideration, defendants agreed to forgive all debts owing them from plaintiffs which had arisen during the preceding 12 months. Plaintiffs agreed to sign over their stock certificates in American Eagle to defendants and place the certificates in escrow for delivery to defendants upon tender of the final payment of $436,000. The agreement provided that defendants were to take possession of the business and operate it according to their best business judgment as of the date of execution.

The agreement, as clarified by a supplemental agreement, represented that plaintiffs owned certain patents and assigned the patents to defendants. Further, the sale agreement represented that defendants were aware of certain lawsuits pending against American Eagle and lawsuits in which American Eagle had entered into settlement agreements; that defendants were accorded an opportunity to inspect American Eagle's books and records and were aware of American Eagle's outstanding liabilities; and that the written agreement constituted the complete agreement between the parties. Testimony at trial indicates that during the period preceding the execution of the sale agreement, Halil Puskar made representations as to the cost at which American Eagle's equipment had been purchased. Puskar further represented that American Eagle's equipment, with the exception of one particular machine, was not subject to any liens or encumbrances.

Shortly after execution of the sale agreement, defendants moved American Eagle's equipment from American Eagle's shop in Bensenville to a location in Rockford.

Halil Puskar and David Hughes had known each other for approximately a year and a half prior to the sale of American Eagle. David

Hughes testified that he and Halil Puskar had developed a very close friendship prior to the transaction. David Hughes had, on several occasions, made substantial loans to Halil Puskar.

In 1984, Halil Puskar had purchased a used Giddings and Lewis machine from David Hughes. Puskar traded two machines he owned for a $14,000 credit against the purchase price of the Giddings and Lewis machine. Puskar testified that the Giddings and Lewis machine was never functional.

Subsequent to entering into the July 14, 1986, agreement, defendants discovered that American Eagle's equipment and accounts receivable had been pledged as collateral to secure certain indebtedness. Additionally, David Hughes testified that they also later discovered debts of American Eagle which were not included in a list of American Eagle's outstanding debts provided them by plaintiffs. Furthermore, American Eagle had been involuntarily dissolved on October 1, 1985, for failure to pay franchise taxes. Charles Hughes testified that during negotiations for the purchase of American Eagle it was his understanding that American Eagle was properly incorporated.

Defendants had tendered $100,000 upon execution of the sale agreement and thereafter had tendered an additional $14,000. No further payments were made. Plaintiffs filed their complaint seeking specific performance of the sale agreement or, alternatively, replevin of the physical assets of American Eagle and damages for breach of the contract for sale of the corporation.

David Hughes filed a countercomplaint alleging that plaintiffs had misrepresented the value of American Eagle's assets, the state of title to American Eagle's equipment, the nature of patents owned by plaintiffs, and the corporate status of American Eagle. He sought reformation or rescission of the agreement. In his count for rescission, David Hughes sought return of all monies paid to plaintiffs pursuant to the agreement. Charles Hughes filed a separate countercomplaint seeking reformation of the agreement and an award of damages.

At trial, Halil Puskar testified that he was familiar with the customary rental value of various machinery and that the rental value of two particular machines owned by American Eagle was $3,700 a month each. Plaintiffs, during their case in chief, also sought to introduce the testimony of Julius Starks as to the cost of returning American Eagle's equipment from Rockford to Bensenville. Starks was barred from testifying because of plaintiffs' failure to disclose him as an expert witness pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). Plaintiffs immediately thereafter disclosed Starks to defendants and, over defendants' objections, once again offered Starks' testimony

during plaintiffs' case in rebuttal. Starks' testimony was allowed and Starks testified that he estimated a cost of $35,000 to move the equipment from Rockford to Bensenville. Halil Puskar testified that it would cost $15,000 to electrify the equipment upon its return to Bensenville.

The circuit court determined that the sale agreement was null and void. A subsequent order amended this order adding that "the contract is rescinded." The court found that plaintiffs owed defendants the $114,000 down payment under the agreement and $62,000 representing loans from defendants to plaintiffs, which had been forgiven under the agreement, totalling $176,000. The circuit court determined that defendants owed plaintiffs $1,140 for one month's rent of the Bensenville premises, $114,500 representing the rental value of American Eagle's equipment, $35,000 to return the equipment to Bensenville, $15,000 to electrify the equipment, and $14,000 representing the value of two machines traded by plaintiffs for the Giddings and Lewis machine, totalling $179,640. The circuit court entered judgment in favor of plaintiffs in the amount of $3,640.

Neither of the parties to the appeal contests the availability of the remedy of rescission in the instant case. Rather, they dispute whether the judgment of the circuit court constitutes a proper application of the principles underlying the remedy of rescission. David Hughes contends that the circuit court erred in awarding certain credits to plaintiffs and offsetting these credits against amounts paid by defendants under the contract for the sale of American Eagle. He contends that the circuit court should have awarded to him, under his counterclaim, the full amount paid under the contract without such setoff.

Plaintiffs maintain, however, that a judgment of rescission must return the party against whom rescission is sought to the status quo preceding the contract. Thus, plaintiffs argue, the trial court, in its grant of rescission, properly awarded plaintiffs certain credits so that both parties would be returned to the positions they occupied prior to the contract. Plaintiffs also briefly state that David Hughes should not be allowed to recover the $100,000 down payment because, they contend, the evidence shows that Charles Hughes made this down payment. Plaintiffs have cited no authority for this proposition and it is without merit. Here, the agreement was between both David Hughes and Charles Hughes and plaintiffs and, as between the parties, upon rescission plaintiffs must return all consideration under the contract whether paid by Charles or David Hughes. We express no opinion as to the relative right as between David and Charles Hughes to the $100,000 down payment, as that was not an issue in this court or below.

■ Generally, rescission means the cancelling of a contract so as to restore the parties to their initial status. (*Horan v. Blowitz* (1958), 13 Ill. 2d 126, 132, 148 N.E.2d 445.) Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated. (*Koretz v. All American Life & Casualty Co.* (1968), 102 Ill. App. 2d 197, 203, 243 N.E.2d 586.) A court of equity may grant the remedy of rescission where there has been some fraud in the making of a contract, such as an untrue statement or the concealment of a material fact (*Chapman v. Hosek* (1985), 131 Ill. App. 3d 180, 186, 475 N.E.2d 593; *Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 569, 476 N.E.2d 1), or where one party enters into a contract reasonably relying on the other party's innocent misrepresentation of a material fact. *Giacomazzi v. Urban Search Corp.* (1980), 86 Ill. App. 3d 429, 432, 407 N.E.2d 621; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 560, 312 N.E.2d 42.

■ Plaintiffs correctly note that inherent in the remedy of rescission is the return of the parties to their proper precontract positions. Rescission is an equitable doctrine, and a party seeking rescission must restore the other party to the status quo existing at the time the contract was made. (*Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 120, 380 N.E.2d 1177.) This rule applies even where the party against whom rescission is sought has committed fraud. *Wilbur v. Potpora* (1984), 123 Ill. App. 3d 166, 172, 462 N.E.2d 734; *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 570-71, 378 N.E.2d 1345.

Plaintiffs maintain that in granting rescission of the contract, the circuit court properly restored them to the status quo by charging defendants for the rental value of equipment and the Bensenville premises and charging defendant for the cost of returning the equipment to Bensenville and electrifying it. Defendant argues, however, that these particular charges could only arise from a contractual arrangement between the parties and that, because the effect of an order of rescission is to render the contract void *ab initio*, such charges are improper.

■ Restoration of the status quo initially requires return of any property or other consideration that has passed to the rescinding party under the contract (*In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 570, 378 N.E.2d 1345; *Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 573-74, 299 N.E.2d 521), and also generally requires the rescinding party to account for any benefits received from the other party under the contract. *Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 462 N.E.2d 13, cited by plaintiffs, states that "[w]here rescis-

sion is awarded then, the proper measure of recovery is restitution of the consideration *and other benefits* received by the parties under the contract." (Emphasis added.) *Finke*, 122 Ill. App. 3d at 919, 462 N.E.2d at 19.

■ The remedy provided a victim of misrepresentation in the Restatement (Second) of Contracts supports the view that a rescinding party must account for benefits he has received. Section 376 of the Restatement (Second) of Contracts provides that a party who has avoided a contract on the ground of mistake or misrepresentation is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance. (Restatement (Second) of Contracts §376 (1981).) Section 384, however, conditions such restitution on return of any benefits by the party seeking restitution. (Restatement (Second) of Contracts §384 (1981).) Comment *a* to that section states that "[i]f a party has received land, goods or other property he is expected to return it. The fact that he has benefited from possession of them does not preclude restitution since he can compensate the other party in money for this benefit." (Restatement (Second) of Contracts §384, comment *a*, at 245 (1981).) "The purpose of requiring a party rescinding a contract to restore to the other party everything of value he has received under it is to make it unnecessary for the party to whom the restoration should be made to bring an action to obtain such restoration." 17 Am. Jur. 2d *Contracts* §512 (1964).

Consistent with this approach is *Williams v. Dunas* (1976), 40 Ill. App. 3d 782, 352 N.E.2d 266, where a purchaser of realty rescinding the contract of sale was required to account for the rental value of the realty during the period of occupancy. The court held that "the purchaser upon his rescission of the contract must also put the seller in the position he was in at the time of the execution of the contract. Thus, the purchaser would be chargeable with the reasonable rental value of the land during the time he held possession plus interest thereon." 40 Ill. App. 3d at 784, 352 N.E.2d at 269; see also *Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 345, 472 N.E.2d 575.

■ The circuit court therefore properly charged against the return of defendant's down payment amounts representing the rental value of American Eagle's equipment ($114,500) and one month's rent at the Bensenville premises ($1,140). These amounts reflect the proper measure of benefits that defendants received through use of the premises for one month and possession of the equipment, the latter which the record reflects was used in his other businesses. Hughes

has not argued on appeal that he did not benefit from the use of the machines and the premises.

The circuit court erred, however, in awarding plaintiffs the cost of moving the equipment back to Bensenville and electrifying it. The court in *Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 472 N.E.2d 575, notes that the party against whom rescission is sought "must be returned to status quo 'insofar as [the other] received any benefit.' " (129 Ill. App. 3d at 346, 472 N.E.2d at 581, quoting *Hakala v. Illinois City Corp.* (1978), 64 Ill. App. 3d 114, 120, 380 N.E.2d 1177, 1181.) In that case, it was held that the seller of realty was properly restored to the status quo without reimbursement of a broker's commission paid by seller because the broker's commission was of no benefit to the buyers. Likewise, in the instant case, the cost of returning the equipment to Bensenville and electrifying it does not represent any benefit conferred by plaintiffs upon defendants. As such, that amount was not a proper component of the restoration of plaintiffs to the status quo.

We further conclude that the circuit court erred in awarding to plaintiffs the value of two machines traded for a nonfunctional Giddings and Lewis machine. That trade occurred prior to and bears no relation to the July 14, 1986, written agreement for the sale of American Eagle, and plaintiffs' complaint contains no claims based on that transaction. Rescission of the contract for the sale of American Eagle does not require restitution to plaintiffs for benefits allegedly conferred under a separate and unrelated transaction.

Thus, the circuit court properly offset against the return of defendants' down payment amounts representing rent on American Eagle's equipment and one month's rent of the shop in Bensenville. However, the court erred in offsetting the cost of returning the machines to Bensenville and electrifying them and the value of the two machines traded in an unrelated transaction.

■■ David Hughes next contends that plaintiffs failed to present sufficient evidence to support the amounts which the circuit court credited them in its judgment. Hughes first argues that Halil Puskar's testimony of the rental value of certain machinery and his testimony of the cost of electrifying the machinery should be discredited because Puskar never established that he was in the business of renting, appraising, or electrifying such machinery. As we have already decided that plaintiffs are not entitled to the cost of electrifying the equipment, we need not address the question of Puskar's competence to testify as to this cost. We find, however, that Puskar's use of the machinery in his business and his testimony that he was familiar with

the rental value of the machinery constitute a sufficient foundation for his testimony on the rental value of the machinery.

It is the trial court's function to determine the credibility of witnesses, and a reviewing court will not substitute its opinion for the finding of the trier of fact unless it is against the manifest weight of the evidence. (*Scheduling Corp. v. Massello* (1987), 151 Ill. App. 3d 565, 570, 503 N.E.2d 806.) There is no basis in the instant case for reversing the circuit court's findings, based on Puskar's testimony which was unrebutted, relative to the rental value of the machines.

■ David Hughes additionally contends that Halil Puskar's testimony as to rental value of certain machinery was, in substance, expert testimony, and therefore, that Puskar's testimony should have been barred for failure to disclose him as an expert pursuant to Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)). Hughes, however, failed to object to Puskar's testimony at trial on the basis of Rule 220, thus waiving our consideration of this point. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 548-49, 475 N.E.2d 817.) In any event, we note our recent decision in *Hill v. Ben Franklin Savings & Loan Association* (1988), 177 Ill. App. 3d 51, 57-58, wherein we held that a party to an action is not subject to the disclosure requirements of Rule 220(b)(1).

Hughes also argues that Julius Starks should have been barred from testifying as to the cost of returning American Eagle's equipment to Bensenville, for failure to disclose Starks as an expert witness as required by Rule 220(b). As we have already determined that plaintiffs are not entitled to the cost of returning the equipment, we need not address this issue.

■ Hughes next contends that the circuit court erred in failing to apply the doctrine of "clean hands" to bar any recovery on behalf of plaintiffs. He maintains that, because plaintiffs had unclean hands, it was improper to offset any charges against the return of the down payment.

As plaintiffs point out, Hughes misconceives the nature of the clean hands doctrine. The clean hands doctrine holds that "he who comes into equity must come with clean hands or, as otherwise stated, one seeking equitable relief cannot take advantage of his own wrong." (*Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.* (1984), 128 Ill. App. 3d 763, 767-68, 471 N.E.2d 554; see also *State Bank v. Sorenson* (1988), 167 Ill. App. 3d 674, 680, 521 N.E.2d 587.) In the instant case, it was Hughes who sought and was awarded equitable relief in his counterclaim for rescission, and the doctrine of clean hands is therefore inapplicable as against plaintiffs, who were

the counterdefendants. (See *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 835, 366 N.E.2d 1114.) As previously noted, inherent in the remedy of rescission is restoration of both parties to the status quo. Hughes seeks to assert misconduct on the part of plaintiffs not to defeat any equitable claim by plaintiffs, but rather to expand the scope of the remedy of rescission so as to allow him to retain benefits conferred by plaintiffs.

As the circuit court in its judgment improperly offset $14,000 for the value of two machines traded for a Giddings and Lewis machine, $35,000 for the cost of moving machinery to Bensenville, and $15,000 for the cost of electrifying the equipment, against the return of the consideration paid by defendants to plaintiffs, the part of the judgment of the circuit court awarding plaintiffs $3,640 against David Hughes is reversed, and judgment is entered in favor of David Hughes against plaintiffs in the amount of $61,060. The appeal of Charles Hughes is dismissed.

Reversed in part and modified; appeal of Charles Hughes is dismissed.

DUNN and INGLIS, JJ., concur.