SIXTH DIVISION
March 26, 2010

No. 1-09-0233

| | | |
|---|---|---|
| DONALD P. HORWITZ, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | No. 06 CH 16913 |
| v. | ) | |
| | ) | |
| SONNENSCHEIN NATH AND ROSENTHAL LLP, | ) | Honorable |
| | ) | Dorothy Kirie Kinnaird, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Donald P. Horwitz appeals the dismissal under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2008)) of his amended complaint against defendant Sonnenschein Nath & Rosenthal, LLP, a law firm where he was a partner. Horwitz's three-count amended complaint sought (1) rescission of a "special partnership" agreement with the firm; and alleged (2) breach of contract and (3) unjust enrichment. Plaintiff appeals. We believe plaintiff's amended complaint pled sufficient facts that, if proven, would entitle plaintiff to relief. We reverse and remand for further proceedings.

Plaintiff's amended complaint alleged that he joined the defendant firm in 1990 as an equity and general partner. In 2000, defendant set up a restructuring program and proposed a "Special Partner" employment agreement to plaintiff. The agreement required plaintiff to give

up his equity interest in the firm six years before his mandatory retirement date but allowed him to be paid beyond the retirement date for part-time work.

A letter of agreement was dated November 30, 2000, and contained the following relevant facts:

"1. *** Effective January 1, 2001, you will become a Special Partner and begin drawing your retirement benefits from the Firm. ***

2. *** For 2001, you will receive as your Special Partner compensation, including your retirement benefit, $79,000 (a supplement to your retirement pay of $18,000). In addition, early in 2002 you will receive a bonus based on your total contribution for 2001. In measuring such contribution, we will take into account directors' fees and stock awards that accrue to the benefit of the Firm. You have asked what supplemental retirement pay you can anticipate *if you bill 700 billable hours and have fee collections of $650,000 if you are treated like others similarly situated. I've advised you that I would expect that the Policy and Planning Committee, under its current approach to Special Partner compensation, would approve supplemental retirement pay of between $75,000 to $100,000 in those circumstances.* [(Emphasis added.)]

***

4. In addition, commencing in 2002 and so long as you continue as a Special Partner, *at the beginning of each year, Firm management will determine the amount of your compensation for that year based upon your then-current*

*contribution to the Firm and the Firm's current practice with regard to*

*compensating Special Partners.* [(Emphasis added.)] So long as you are

employed as a Special Partner by the Firm, during the period of payment of

retirement benefits, any compensation paid to you by the Firm shall be applied *pro*

*tanto* in lieu of retirement benefits which would otherwise have been paid during

that period of employment, and each month of such employment, whether on a

full-time or part-time basis, shall constitute a month of retirement for purposes of

the partnership agreement."

Defendant informed plaintiff by letter on June 8, 2005, that the firm would "no longer pay

you a supplement to your retirement benefit, commencing in 2006."

Plaintiff filed a complaint for rescission and other relief on August 18, 2006. In an

amended complaint on March 13, 2007, plaintiff alleged: count I: rescission; count II: breach of

contract; and count III: unjust enrichment.

The following paragraphs are relevant to the dismissal of the complaint under section 2-

615 (735 ILCS 5/2-615 (West 2008)):

"31. In the fall of 2000, *** the Firm proposed that Horwitz enter into a

written agreement [(the Agreement)] that would change his status in the Firm

from that of an equity partner to that of a non-equity Special Partner. ***

32. Horwitz could have remained an equity partner until December 31,

2006. Horwitz reasonably believed that his compensation as an equity partner

would have increased in the future because he was responsible for generating

3

higher billings for the Firm.

33. By becoming a Special Partner, Horwitz could, if he chose, continue to be active in the firm part-time as a Special Partner and contribute to the Firm for a significant number of years past his December 31, 2006[,] retirement date and be compensated accordingly.

34. Horwitz accepted the Firm's proposal to change his status in the Firm and relinquished his equity interest in the firm. ***

35. The Agreement had been drafted by the Firm and presented to Horwitz in its entirety. Horwitz made no changes. Horwitz's relinquishment of his equity interest in the Firm was good and valid consideration for the promises contained in the Agreement. ***

* * *

47. Horwitz has performed all of his obligations under the Agreement.

* * *

50. Horwitz has continued as a Special Partner from January 1, 2001[,] until and through the date this Amended Complaint was filed. ***

51. The Firm has continued to treat Horwitz as eligible for the same benefits made available to Equity Partners and Special Partners of the Firm ***. Horwitz was entitled to be paid Special Partner compensation in 2006 and 2007, because he continued to be a Special Partner and he continued to contribute to the Firm.

52. As set out in the following paragraphs, there has been substantial nonperformance of the Agreement by the Firm. The Firm violated and breached the Agreement in at least the following ways:

(a) The Firm failed to compensate and pay Horwitz for so long as Horwitz continued as a Special Partner and made a contribution to the Firm;

(b) The Firm failed to determine and pay Horwitz Special Partner compensation for each of the years 2001 through and including 2007 fairly and in good faith;

(c) The Firm failed to determine and pay Horwitz compensation for each of the years 2001 through and including 2007 on the basis of Horwitz's respective then-current contribution to the Firm;

(d) The Firm failed to determine and pay Horwitz compensation for each of the years 2001 through and including 2007 consistent with the Firm's then-current practice with regard to compensating Special Partners; and

(e) The Firm anticipatorily breached its obligation to compensate Horwitz for the years following 2007; and

(f) The Firm repudiated the Agreement. ***

* * *

56. At or about the time the Firm wrongfully reduced Horwitz's

compensation from $99,000 to $38,000 for 2002, the Firm determined to pay Horwitz the same extremely low, flat and arbitrary $38,000 amount of compensation for 2003, 2004, and 2005. This constituted a material and fundamental breach of the Agreement. ***

* * *

66. The Special Partner compensation paid to Horwitz for 2001-2006 was substantially below the amounts which should have been paid to him under the Firm's policies and practice regarding compensation and according billing credit ***.

* * *

69. [T]he Firm's stated policy for according billing credit to partners, including *** Special Partners, was as follows [from the Firm's Lawyer's Handbook]:

[']Historically, the Firm has generally accorded billings credit to the partner responsible for originating the client relationship to the Firm, or to the partner acceding to the primary client relationship where the originating billing partner has retired or otherwise left the Firm. ***['] ***

70. It has long been the Firm's practice, that when a partner brings in a new client that partner (referred to herein as the 'originating partner') is credited with all billings to that client, including billings for all additional and subsequent

matters for that client, whether brought in by that partner or \*\*\* by other partners in the Firm and whether worked on or supervised by that partner or \*\*\* by other partners of the Firm.

71. The Agreement contained language which caused Horwitz to reasonably believe that the Firm would follow its from time to time stated policy with regard to according billing credit to partners in determining his Special Partner compensation each year and that the Firm would treat him similarly to the way it treats other similarly situated Special Partners, Special Partners with agreements promising compensation each year based upon their then-current contribution to the Firm.

72. During one or more of the years subsequent to 2001, Horwitz was directly responsible for the Firm's being engaged by various parties to represent them in matters that generated income for the Firm. These parties included: [three clients]. Horwitz was the originating partner for [one client]. Horwitz was not accorded credit for certain \*\*\* billings. Horwitz originated [another client's] relationship with the Firm, and Horwitz was and continues to be the only lawyer at the Firm who did or does work for [that client]. \*\*\* The Firm did not give Horwitz any credit for billings it collected from [that client].

73. It has been the practice of the Firm to accord billing credit to partners \*\*\* who served on boards of directors of clients who paid significant billings. The Firm ignored this policy with respect to Horwitz's role with \*\*\* a significant

7

client of the Firm, for which Horwitz was a board member, had the leadership role at the Firm for the client, and was directly responsible for the client's expansion of its business with the Firm.

74. Despite the foregoing and contrary to the Firm's policy for according billing credit and its practice with regard to compensating Special Partners, the Firm did not credit Horwitz for certain billings collected from the clients listed in the following paragraph in determining Horwitz's Special Partner compensation.

75. Other partners at the Firm were wrongfully accorded billing credit for certain billings to [three clients]. This violated the Firm's stated policy on according billing credit. By according equity partners with credit for such billings, the Firm inflated its average profits per equity partner, increased the profits realized by the equity partners of the Firm, and inflated the Firm's net income, thereby increasing the apparent value and reputation of the Firm.

76. At the beginning of each of the years 2001, 2002, 2003, 2004, and 2005, the Firm's practice with regard to compensating Special Partners was to give significant weight to client billings, far greater weight than was given to Horwitz's billings in determining his Special Partner Compensation for [those years].

77. According to the Firm, during the years 2001, 2002, 2003, and 2004, Horwitz was responsible for annual billings of $1,243,000, $570,000, $324,000, and $568,000, respectively. Such billing amounts did not include the Firm's billings to [two clients] and certain billings to [another client], all of which should

8

have been credited to Horwitz.

78. During 2003, Horwitz brought in a new client to the Firm, which generated fees collected by the Firm from this client in the amount of $165,115 in 2003 and $480,401 in 2004 (an aggregate of $645,516). While the billings for this new client were credited to Horwitz, the Firm did not give Horwitz any additional compensation for bringing in this new business. Instead, Horwitz's compensation for 2003, 2004, and 2005 was determined without regard to such billings such that his Special Partner compensation was successively reduced by $1,000 in each of the years 2004, 2005 and then to zero.

79. In 2006, Horwitz brought in a new client to the Firm who paid at least $115,000 to the Firm in 2006. In 2006, the Firm also received from Horwitz the fees he received *** as the result of arbitrations he conducted in 2005 and 2006, as well as the salary paid to Horwitz by [a client] in 2006.

80. The Agreement required that Firm management determine Horwitz's compensation for 2001 by treating Horwitz 'like others similarly situated.' For the years following 2001, the Agreement required that the Firm determine Horwitz's compensation consistent with the Firm's then-current practice with regard to compensating its Special Partners. These provisions were particularly important to Horwitz because they assured him that he would be treated fairly and equitably in comparison to those of the Firm's other Special Partners who were similarly situated, that is Special Partners who had been promised their compensation

would be based upon their from time to time contribution to the Firm. Horwitz would not have entered into the Agreement if these provisions or some similar provisions had not been part of the Agreement.

* * *

93. The Firm's deliberate and intentional failure to observe material and important terms of the Agreement it drafted constitutes substantial nonperformance of the Agreement and justifies Horwitz's rescission of the Agreement.

94. This Amended Complaint is notification to the Firm that Horwitz is rescinding the Agreement on the grounds set forth herein. Horwitz is ready, willing and able to offset or restore to the Firm all consideration given him by the Firm under the Agreement, including the retirement benefits paid to him, all on condition that Horwitz is provided restitution of his status prior to the Agreement: (*i.e.*, that he be restored to his equity interest in the Firm together with the earnings and retirement benefits he would have been entitled to had he not relinquished his equity partnership interest in the Firm as of January 1, 2001).

95. Horwitz is entitled to have restored to him the equity interest he owned in the Firm as of December 31, 2000, and the profits his equity interest would have been entitled [to receive] prior to Horwitz's mandatory retirement date of December 31, 2006, ***. ***

96. The amount of earnings which should be restored to Horwitz through

rescission must be based upon what he would have been entitled [to receive] had he retained his position as a full-time equity partner ***. ***

97. The Firm has provided Horwitz and this Court with an accurate, efficient and equitable means for determining the amount of earnings which needs to be restored to Horwitz for rescission. ***

98. Once this court approves Horwitz's election to rescind, and both parties are restored to their [status quo *ante*], Horwitz's status with the Firm will be resolved and neither party will be obligated under the Agreement. It will be as if Horwitz and the Firm had never entered into the Agreement. Since the date of Horwitz's mandatory retirement date has passed, Horwitz will have the status of a retired equity partner, entitled to receive whatever retirement and other benefits he would have received had he retired on December 31, 2006, and he will be subject to whatever restrictions and provisions in the Firm's partnership agreement [that] apply to him as a retired equity partner."

Defendant moved to dismiss the amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)). On October 1, 2008, the trial court in a written order dismissed with prejudice count I for rescission. The trial court also dismissed with prejudice count II for breach of contract. Finally, the trial court dismissed count III for unjust enrichment without prejudice and with leave to replead. Plaintiff elected not to replead count III. The trial court entered a final judgment on January 15, 2009, which included the dismissal of count III with prejudice. Plaintiff appeals both the October 1, 2008, and the January 15, 2009, orders.

11

"A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." Tedrick v. Community Resource Center, Inc. 235 Ill. 2d 155, 160-61, 920 N.E.2d 220 (2009). Our standard of review is *de novo.* Tedrick, 235 Ill. 2d at 161. We accept as true the well-pleaded facts and reasonable inferences in the complaint and construe the allegations in the light most favorable to the plaintiff. Tedrick, 235 Ill. 2d at 161. "Given these standards, a cause of action should not be dismissed, pursuant to a section 2-615 motion, unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." Tedrick, 235 Ill. 2d at 161.

Plaintiff argues the trial court erred in finding he failed to state a cause of action for breach of the agreement. "To establish a breach of contract [or agreement], the plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff." Sherman v. Ryan, 392 Ill. App. 3d 712, 732, 911 N.E.2d 378 (2009). "Under general contract principles, a material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations." Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52, 70, 866 N.E.2d 85 (2006).

Plaintiff alleged a valid and enforceable contract in paragraphs 31 through 35. Plaintiff alleged his own performance of the contract in paragraphs 47 through 51. In paragraphs 52 through 55, plaintiff alleged a material and fundamental breach by defendant. And in paragraphs 56 through 80, plaintiff alleged he was injured. These allegations were sufficient to state a cause of action for breach of agreement and should not have been dismissed on defendant's section 2-

1-09-0233

615 motion (735 ILCS 5/2-615 (West 2008)).

Plaintiff next argues that the trial court erred in dismissing the individual counts in his amended complaint, beginning with count I for rescission. "Generally, rescission means the cancelling of a contract so as to restore the parties to their initial status." Puskar v. Hughes, 179 Ill. App. 3d 522, 528, 533 Ill. App. 3d 962 (1989). "Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated." Puskar, 179 Ill. App. 3d at 528. A claim for rescission is sufficient if it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo *ante*. Ahern v. Knecht, 202 Ill. App. 3d 709, 715-16, 563 N.E.2d 787 (1990).

"[S]ubstantial nonperformance or breach of contract warrants rescission where the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." Ahern, 202 Ill. App. 3d at 715.

Here, plaintiff's amended complaint stated allegations sufficient to establish the substantial nonperformance or breach. Paragraph 4 of the agreement provided that plaintiff's compensation would be determined at the beginning of each year and based on his then-current contribution to defendant. Plaintiff alleged in paragraphs 52(c) and 52(d) that defendant failed to determine and pay compensation from 2001 through 2006 according to his then-current contribution to defendant and defendant's then-current practice of compensating special partners. Specifically, plaintiff alleged in paragraphs 72 and 77 that he was not accorded credit for billings to clients for which he was directly responsible. Plaintiff alleged in paragraph 73 that he was not

13

accorded billing credits for a client on whose board of directors he served. Plaintiff alleged in paragraph 75 that other partners were wrongfully accorded billing credit to which he was entitled. He alleged in paragraph 76 that in certain years client billings of other special partners were given greater weight than his client billings. Plaintiff alleged in paragraphs 78 and 79 that he was not properly credited for new business and his compensation was successively reduced despite new client billings for which he was responsible. Plaintiff further alleged in paragraph 79 that he was not credited other fees he generated for work such as conducting arbitrations. He alleged in paragraph 80 that he was not treated like other special partners, similarly situated.

These allegations, if proven, would establish the first element of a rescission claim, defendant's substantial nonperformance of the agreement. Ahern, 202 Ill. App. 3d at 715-16.

The second element necessary for a rescission cause of action is a showing that the parties can be restored to the status quo *ante*. Ahern, 202 Ill. App. 3d at 715-16. "[I]nherent in the remedy of rescission is the return of the parties to their proper precontract positions." Puskar, 179 Ill. App. 3d at 528. "[A] party seeking rescission must restore the other party to the status quo existing at the time the contract was made." Puskar, 179 Ill. App. 3d at 528. "Restoration of the status quo initially requires return of any property or other consideration that has passed to the rescinding party under the contract [citations], and also generally requires the rescinding party to account for any benefits received from the other party under the contract." Puskar, 179 Ill. App. 3d at 528. Plaintiff in paragraph 94 of the amended complaint stated he was "ready, willing and able" to restore defendant's consideration, including retirement benefits. He alleged in paragraphs 95 though 97 he could be restored to his equity interest in the firm and the retirement

benefits he would have received had he not relinquished his equity partnership. Plaintiff alleged in paragraph 98 that he would assume the status of retired equity partner, with its benefits, restrictions and provisions.

These allegations, if proven, would establish the second element of rescission necessary to avoid a section 2-615 dismissal.

Defendant relies on Wilkonson v. Yovetich, 249 Ill. App. 3d 439, 445-46, 618 N.E.2d 1120, 1125-26 (1993), to argue that return to the status quo *ante* is impossible and for this reason, plaintiff has failed to state a claim for rescission. In Wilkonson, the plaintiffs were among the parties to a family settlement agreement on an estate. The plaintiffs sought to rescind the agreement in which the defendant, the decedent's widow, agreed to forego certain rights in return for cash and property. We concluded the complaint could not survive a section 2-615 motion to dismiss because the defendant had given up substantial rights, including her right to administer the estate, collect a widow's award, denounce the will or claim a spousal share. We determined that the parties could not be placed in the same position they had occupied four years earlier when the defendant relinquished these rights. "The defendant cannot regain these legal rights she has given up. Moreover, the administration of the estate cannot be undone." Wilkonson, 249 Ill. App. 3d at 446.

Here, plaintiff's narrative in his amended complaint of the means to restore the status quo *ante* was sufficient to establish the second requirement of a cause of action for rescission. Unlike the plaintiffs in Wilkonson, plaintiff here showed that restitution was possible and described how it could be done. Nothing more is required at the pleading stage.

Defendant argues plaintiff's amended complaint was insufficient to state a cause of action for rescission or breach of contract because, by signing the agreement, plaintiff allowed defendant to make compensation decisions and weigh the value of plaintiff's contributions. We disagree. The agreement allowed defendant to make compensation decisions only within specific guidelines: (1) annually at the beginning of each year; (2) based on plaintiff's contributions; (3) based on defendant's then-current practices of compensating special partners; and (4) plaintiff would be paid as long as plaintiff was a special partner. Plaintiff's amended complaint alleges defendant did not make its decisions within these guidelines.

Defendant maintains the federal Seventh Circuit Court's decision in Roan v. Keck, Mahin & Cate, 962 F.2d 10 (7th Cir. 1992) (table) (unpublished opinion), supports the trial court's dismissal of the amended complaint. An unpublished federal decision is not binding on Illinois courts. Illinois State Toll Highway Authority v. Amoco Oil Co., 336 Ill. App. 3d 300, 317, 783 N.E.2d 658 (2003). But even if Roan were binding, it would not control here.

In Roan, a magistrate judge dismissed the plaintiff's complaint for failure to state a breach of contract cause of action. Roan, slip op. at 1. The plaintiff was a capital partner in the defendant law firm. The plaintiff alleged the firm and its partners breached the compensation provisions of the partnership agreement. These required the firm's *compensation committee* to use certain guidelines in developing its recommendations to the firm's management committee. The guidelines required the compensation committee to consider: "the quality of each lawyer's work; the initiative and responsibility displayed in handling Firm clients; the industry and application displayed; the lawyer's judgment and experience in the practice of law; the new

16

business, if any, attracted and the profitability of his work to the firm; and the client development and preservation and other significant contributions, if any, to the operation and success of the Firm." Roan, slip op. at 2. But the compensation committee's recommendations were not final. The management committee could make changes, unrestrained by the guidelines. The decisions of the management committee would be final absent amendment by a consensus of the capital partners. Roan, slip op. at 2. The magistrate judge concluded the plaintiff had received the benefit of the bargain and dismissed the complaint. On appeal, the circuit court found the plaintiff's breach of contract claim failed for two reasons. Roan, slip op. at 4. First, only the compensation committee and not the management committee was subject to the guidelines. Roan, slip op. at 5. The plaintiff did not allege that the compensation committee failed to follow the guidelines. Instead he alleged the firm and its partners failed to follow the guidelines. The firm and partners were not obliged to follow the guidelines and so the plaintiff's complaint failed. Roan, slip op. at 4. The circuit court further found the guidelines were "too indefinite to create any enforceable contract rights." The management committee had "*unlimited* discretion" in making the final determination. (Emphasis in original.) Roan, slip op. at 6.

The agreement and allegations here differ from those in Roan. Defendant here did not have *unlimited discretion* in determining plaintiff's compensation. The language in paragraph 4 of the agreement, "based on your contribution and the firm's current practice," was specific enough to be actionable. Plaintiff alleged in his amended complaint that defendant failed to follow these requirements. Unlike the guidelines in Roan, the requirements here were specific enough to be enforceable. Roan, slip op. at 6.

Defendant argues that even if <u>Roan</u> is distinguishable, plaintiff cannot establish breach of contract by relying on an excerpt from defendant's lawyer's handbook. Paragraph 69 of the amended complaint quotes an excerpt from defendant's "lawyer's handbook," describing the firm's methods of according billing credits to partners with client relationships. Defendant maintains this paragraph failed to state a claim because the handbook does not establish a contractual obligation. Despite the quotation from paragraph 69, we do not believe plaintiff relied on the handbook to show a contractual obligation. Instead, defendant relied on the written agreement of November 30, 2000. Plaintiff's quotation from the handbook merely supports the claim that defendant did not use its then-current practices in determining plaintiff's compensation as required under paragraph 4 of the agreement. These allegations were sufficient to survive dismissal under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)).

During the pendency of this appeal, the District of Columbia Court of Appeals issued <u>Rosenthal v. Sonnenschein Nath & Rosenthal, LLP</u>, 985 A.2d 443 (D.C. 2009), in which defendant was a party. We granted plaintiff's motion to consider this decision and we have done so. We conclude that despite the fact that the District of Columbia court, like this court, heard allegations that defendant breached the implied covenant of good faith and fair dealing, the differences between the cases preclude comparison. <u>Rosenthal</u>, 985 A.2d at 448. As defendant points out in response to plaintiff's motion, <u>Rosenthal</u> is an interim decision from another jurisdiction, involving a different agreement and different laws. <u>Rosenthal</u> is not relevant to our analysis here.

Defendant next argues plaintiff cannot establish breach of contract because the agreement

contained no promise of lifelong employment. Defendant argues the agreement was terminable at will by either party under the rules of partnership set forth in <u>Ahlgren v. Blue Goose Supermarket</u>, 266 Ill. App. 3d 154, 160, 639 N.E.2d 922 (1994) ("It is well established in Illinois that an employer-employee relationship without a fixed duration is terminable at will by either party"); and <u>Maimon v. Telman</u>, 40 Ill. 2d 535, 538, 240 N.E.2d 652 (1968) ("Under familiar rules of partnership, if no date is specified in the agreement it may be terminated at the will of either partner"). The breaches alleged here occurred while plaintiff remained employed as a special partner, from January 1, 2001, up to and including the date plaintiff filed the amended complaint on March 13, 2007. Issues of lifelong employment and terminate-at-will employment contracts are irrelevant to allegations of a breach while plaintiff was employed.

Defendant next argues that plaintiff's claim was properly dismissed because he failed to state a specific amount defendant was required to pay him. Defendant relies on <u>Romanek v. Connelly</u>, 324 Ill. App. 3d 393, 404, 753 N.E.2d 1062 (2001), to argue that plaintiff's failure to allege a specific amount of compensation due to him is fatal to his claims. Plaintiff responds, and we agree, that defendant overstates the holding of <u>Romanek</u>. There, this court relied on the rule that a plaintiff in a breach of contact action must allege "the definite and certain terms of the parties' agreement." <u>Romanek</u>, 324 Ill. App. 3d at 404. The plaintiff had not done so: "Particularly, the complaint is silent as to the percentage of the *** fee, or basis thereof, to be paid plaintiff." <u>Romanek</u>, 324 Ill. App. 3d at 404. Here, plaintiff alleged the breach of "definite and certain terms," including those set out in paragraphs 52(a) through (f) of the complaint. The allegations were specific enough to survive dismissal.

19

Defendant further argues the trial court properly dismissed the amended complaint because the agreement set no minimum compensation amount and the implied covenant of good faith and fair dealing did not require defendant to compensate plaintiff more generously than it did. "A covenant of good faith and fair dealing is implicit in every contract as a matter of law." Franz v. Calaco Development Corp., 352 Ill. App. 3d 1129, 1152, 818 N.E.2d 357 (2004). But we concluded earlier in this opinion the express written agreement between the parties required defendant to set plaintiff's compensation within guidelines: (1) plaintiff's then-current contributions to the firm; and (2) defendant's then-current compensation policies for special partners. We further concluded that the amended complaint alleged defendant did not set plaintiff's compensation within these guidelines. This established a cause of action for breach of contract under the express agreement and does not implicate the implied covenant of good faith and fair dealing as a source of relief. See Resolution Trust Corp. v. Holtzman, 248 Ill. App. 3d 105, 113, 618 N.E.2d 418 (1993) (express covenants abrogate the operation of implied covenants, including the covenant of good faith and fair dealing); Suburban Insurance Services, Inc. v. Virginia Surety Co., Inc., 322 Ill. App. 3d 688, 693, 752 N.E.2d 15 (2001) ("The covenant of good faith and fair dealing does not allow a party to read an obligation into a contract that does not exist").

Plaintiff argues the trial court erred in finding he failed to state a cause of action for unjust enrichment in count III. Plaintiff claims this count does not depend on the agreement but rather is a contract implied in law, under In re Estate of Milborn, 122 Ill. App. 3d 688, 690, 461 N.E.2d 1075 (1984). "A contract implied in law differs from a contract implied in fact in that it

20

arises by implication of law wholly apart from the usual rules relating to contracts and does not depend on an agreement or consent of the parties."  Estate of Milborn, 122 Ill. App. 3d at 690. "A contract implied in law is equitable in nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense."  Estate of Milborn, 122 Ill. App. 3d at 690.  "Where services are rendered by one person for another which are knowingly and voluntarily accepted, the law presumes that such services were given and received in the expectation of being paid for and implies a promise to pay their reasonable worth."  Estate of Milborn, 122 Ill. App. 3d at 690.  Accord In re Estate of Teall, 329 Ill. App. 3d 83, 89, 768 N.E.2d 124 (2002).

In paragraphs 105 though 111, plaintiff alleged unjust enrichment as an "alternative separate action at law."  Plaintiff alleged: "Horwitz relinquished his equity interest in the Firm, performed legal services for the Firm's clients, earned income from others for the benefit of the Firm[,] helped to retain and expand the Firm's business with its existing clients and helped the Firm obtain new clients for which the Firm did not pay him reasonable and fair compensation." Plaintiff maintains defendant unjustly retained these benefits to his detriment.  Defendant argues the trial court properly found that plaintiff failed to state a claim for unjust enrichment because he was compensated under the terms the agreement.  See Ramirez v. Smart Corp., 371 Ill. App. 3d 797, 809, 863 N.E.2d 800 (2007) (where there is an express contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application).  But where a party pleads breach of contract, he also can plead unjust enrichment in the alternative.  Guinn v. Hoskins Chevrolet  361 Ill. App. 3d 575, 604, 836 N.E.2d 681 (2005).

21

Here, under the rationale set forth in <u>Estate of Milborn</u>, 122 Ill. App. 3d at 690, plaintiff alleged a cause of action of unjust enrichment under a contract implied in law. The trial court erred in dismissing this count under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)).

In summary, we conclude the trial court erred in dismissing plaintiff's amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) because the paragraphs from plaintiff's amended complaint we have cited pled sufficient facts that, if proven, would entitle plaintiff to relief.

Reversed and remanded.

J. GORDON and McBRIDE, JJ., concur.