NOTICE
Decision filed 10/19/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150404

NO. 5-15-0404

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LARKIN HOLMON, Independent Administrator of the Estate of Taymond Freeman, Deceased, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 14-L-136 |
| THE VILLAGE OF ALORTON, | ) ) | Honorable Randall W. Kelley, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    Larkin Holmon, administrator of the estate of Taymond Freeman, appeals from the circuit court's order denying Holmon's motion for partial summary judgment and granting a motion for judgment on the pleadings filed by the Village of Alorton, the appellee. The appellant seeks to rescind an agreed-upon bankruptcy plan under which the appellee was to make payments to Freeman's estate. We affirm the circuit court's decision denying the appellant's motion for partial summary judgment and granting the appellee's motion for judgment on the pleadings as it relates solely to the issue of rescission. We remand for

1

further proceedings allowing the appellant to enforce the bankruptcy plan payment provisions.

¶ 2                                    BACKGROUND

¶ 3    On May 31, 1999, Taymond Freeman was shot by Thomas McGowan, a police officer employed by the appellee. On March 7, 2005, a bench trial was held, in which Freeman brought, against McGowan, claims of battery and claims relating to violations of his right to be free from unreasonable search and seizure and his right to be afforded due process of law. On March 23, 2005, a judgment was entered in favor of Freeman and against McGowan in the amount of $978,874.40 plus costs of $1821.18. In its judgment, the circuit court held that McGowan's conduct was not willful, therefore making the appellee liable to reimburse McGowan for the damages awarded.

¶ 4    On January 6, 2005, the appellee filed a chapter 9 bankruptcy proceeding (11 U.S.C. § 901 *et seq.* (2000)) in the United States Bankruptcy Court for the Southern District of Illinois. Freeman was the appellee's largest creditor. Due to the size of his claim, if Freeman did not vote to approve the appellee's chapter 9 plan of adjustment in bankruptcy, the plan would not be approved. Freeman agreed to the appellee's amended plan of adjustment, which established a new class of creditors, "Class 7," consisting solely of Freeman. Under this amended plan, Freeman was to receive a total of $600,000, payable in monthly installments of $2500 over 20 years, with the first payment due on the sixty-first month following the confirmation of the appellee's bankruptcy plan.

¶ 5    Section 5.06 of the amended plan of adjustment, which addressed payment of Freeman's claim, provided as follows:

2

"5.06 Class 7: The creditor in this class consists of the claim for an outstanding judgment against the Debtor in favor of Taymond Freeman. The creditor will receive $600,000.00 of his entire claim, to be paid in monthly installments of $2,500 for a period of twenty (20) years, first payment to be made on the 61st month (5 years) following the date of confirmation of the Plan, then $2,500 each month thereafter for the remaining twenty (20) years."

¶ 6 Another pertinent part of the amended plan of adjustment, section 7.01, dealing with the effect of the plan on confirmation, provided as follows:

"The distributions and rights afforded in this Plan shall be in complete satisfaction, discharge and release, effective on the Confirmation Date (hereinafter 'Discharge Date'), of all Claims against and Interests in the Debtor or any of the assets or properties of the Debtor of any nature whatsoever. Commencing on the Discharge Date, all Claimholders and Interestholders shall be precluded forever from asserting against the Debtor, or the reorganized Debtor, or the respective assets and properties, any other or further liabilities, liens, obligations, causes of action, claims or equity interests, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based upon any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Discharge Date, that was or could have been the subject of any Claim or Interest, whether or not Allowed, except with respect to classes of claims unimpaired pursuant to this Plan, said classes of claims and claimholders therein having been fully satisfied. As of the

3

Discharge Date, the Debtor shall be discharged and released from, and the Debtor shall hold all assets and properties received or retained by it pursuant to this Plan free of all liabilities, liens, claims and obligations or other claims of any nature, including but not limited to equity interests, known or unknown, except classes of claims unimpaired pursuant to this Plan, and any liens, liabilities, obligations or other claims expressly authorized under this Plan or created by or preserved under this Plan or arising after the Discharge Date. All legal or other proceedings and actions seeking to establish or enforce liabilities, liens, claims, equity interests or obligations of any nature as against the Debtor or assets or properties received or retained by the Debtor with respect to debts and obligations, if any, arising before the Discharge Date shall be permanently stayed and enjoined, except as otherwise specifically provided in this Plan."

¶ 7 On December 11, 2006, the amended plan of adjustment was confirmed, and on April 4, 2007, the bankruptcy court filed an order closing the bankruptcy case.

¶ 8 Subsequent to the confirmation of the amended plan of adjustment and prior to any payments being made under the plan, a judgment in the amount of $346,000 was entered against Freeman in favor of Stacy Goodlow in Goodlow v. Freeman, No. 06-L-531 (Cir. Ct. St. Clair Co.). On January 14, 2009, the circuit court entered an order in this case, which redirected a portion of the bankruptcy plan payments to Stacy Goodlow in satisfaction of her judgment against Freeman. Under this order, the appellee would pay $400,000 of the $600,000 to Goodlow and a maximum of $200,000 of the $600,000 to Freeman. Accordingly, two-thirds of the monthly plan payments would go to

4

Goodlow and one-third to Freeman. On March 12, 2009, Freeman was murdered. On May 14, 2012, an estate was opened in the circuit court of St. Clair County, and on June 18, 2012, Larkin Holmon, Freeman's father, was appointed independent administrator of the estate of Taymond Freeman.

¶ 9   On January 11, 2012, the appellee was due to pay the first payment under the bankruptcy plan. Appellee made some, but not all, plan payments, and as of February 14, 2015, the appellee had paid the appellant $20,000. The appellant argues that, as of February 14, 2015, the appellee should have paid $95,000 to the appellant. The appellee does not dispute that it owes Freeman $200,000, less payments made under the bankruptcy plan, nor does it dispute that it is behind on its payments.

¶ 10   Sometime after Freeman's death, the appellant filed a motion in the United States Bankruptcy Court for the Southern District of Illinois seeking to reopen the bankruptcy case. On July 31, 2013, the motion to reopen was denied by the bankruptcy court. An appeal of the bankruptcy court order denying the reopening of the bankruptcy case was taken to the United States District Court for the Southern District of Illinois, which affirmed this denial on October 30, 2013. See *Holman v. Village of Alorton*, No. 13-CV-925-JPG (S.D. Ill. Oct. 30, 2013). According to the district court's order, the appellant argued that the federal courts should have found the state courts lacked jurisdiction to redirect payments to Goodlow. In affirming the denial, the district court noted that, under the plan, a "contract" arose between the appellee and Freeman that was enforceable in state court. Further, the district court noted that Illinois state law allows the state courts

5

to order the appellee to direct payments to Goodlow in satisfaction of Goodlow's judgment against Freeman.

¶ 11   On January 31, 2014, the appellant filed suit against the appellee for breach of contract, resulting in these proceedings.  The appellant's complaint seeks to hold the payment agreement arising from the bankruptcy plan null and void and to reinstate the March 23, 2005, judgment in the amount of $978,874.40 plus costs.  On March 18, 2015, the appellant filed a motion for partial summary judgment with the circuit court of St. Clair County.  In the motion, the appellant requested a finding that "the [appellee] is in breach of its contract with Taymond Freeman entered into in the bankruptcy of the [appellee] and that the contract is to be held null and void."  The appellant further sought (1) to hold the judgment entered on March 23, 2005, in the amount of $978,874.40 plus costs to be in full effect, (2) costs of the current action, (3) postjudgment interest awarded at 9% since March 23, 2005, and (4) to set a hearing for the award of attorney fees in the originating case.  The appellant stated that the appellee should be given credit for the payments of $20,000 made to the appellant.

¶ 12   On April 30, 2015, the appellee filed a motion for judgment on the pleadings, arguing that Freeman had accepted the bankruptcy plan, that the appellant was Freeman's successor in interest and therefore bound by the bankruptcy plan, and that therefore the appellant may only recover the money due under the bankruptcy plan.  On September 1, 2015, the circuit court entered an order denying the appellant's motion for partial summary judgment and granting the appellee's motion for judgment on the pleadings.  In its order, the circuit court found that the appellee had "not complied with the Chapter 9

6

Plan and, in fact, owe[d] a total of $600,000," with $400,000 less payments made owed to Goodlow and $200,000 less payments made owed to the appellant; that "[t]here is no dispute of material fact as to the amount owed under the Chapter 9 Plan"; and that "[the appellant] admits that [the appellee] has paid $20,000 toward the Plan." The circuit court noted that the appellant's "relief is to enforce its contract against the [appellee]," that rescission of the "contract" as requested by appellant is impossible because the March 23, 2005, judgment was discharged once the bankruptcy plan was entered, and that the circuit court lacked the authority to vacate the bankruptcy. The circuit court therefore "decline[d] to exercise its discretion to grant rescission of the contract" and held that appellee's "Motion for Judgment on the Pleadings *as it relates to the issue of rescission* is GRANTED" (emphasis added). On September 28, 2015, the appellant filed notice of appeal.

¶ 13                                    ANALYSIS

¶ 14 The appellant challenges the circuit court's denial of his motion for partial summary judgment. The appellant also challenges the circuit court's grant of the appellee's motion for judgment on the pleadings based on the appellee's purely legal challenge to the appellant's complaint. Both motions for partial summary judgment and motions for judgment on the pleadings on purely legal challenges are reviewed *de novo*. See *Sinclair Oil Corp. v. Allianz Underwriters Insurance Co.*, 2015 IL App (5th) 140069, ¶ 34; *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 45-47.

7

¶ 15   "A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002).  Both parties agree, as does this court, that a new "contract" was formed between the two parties under the bankruptcy plan.  Section 5.06 of the bankruptcy plan sets forth the terms of the "contract."  Freeman was to receive $600,000 of his entire claim of $978,874.40 plus costs payable in monthly installments of $2500 over 20 years.  Per the later agreed state court order with Freeman's judgment creditor Goodlow, Goodlow would be paid $400,000 by two-thirds of each monthly installment, and the appellant would be paid $200,000 by one-third of each monthly installment.

¶ 16   The appellant seeks to rescind the "contract" between himself and the appellee created by the bankruptcy plan.  The appellant argues that due to the appellee's admitted nonperformance of its obligations, this "contract" should be rescinded and the prebankruptcy plan confirmation judgment amount restored.  " '[R]escission means the cancelling of a contract so as to restore the parties to their initial status.' "  *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (2010) (quoting *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528 (1989)).  A party seeking rescission must be able to " 'restore the other party to the status quo existing at the time the contract was made.' " *Id*. at 974 (quoting *Puskar*, 179 Ill. App. 3d at 528).

¶ 17   Section 7.01 of the bankruptcy plan further delineated the terms of the "contract" by providing the effect of confirmation of the plan.  Section 7.01 of the plan provided that "[t]he distributions and rights afforded in this Plan shall be in complete satisfaction,

8

discharge and release *** of all Claims against and Interests in the Debtor" that were not explicitly preserved under the bankruptcy plan. Section 7.01 further provided that as of the confirmation of the plan, the debtor shall be discharged and released from all claims except claims created or preserved under the plan.

¶ 18   A bankruptcy plan "operates as an absolute settlement, and the failure to pay unpaid obligations created by the plan will not revive the old debts." *In re Curry*, 99 B.R. 409, 411 (Bankr. C.D. Ill. 1989). "There is nothing in the [Bankruptcy] Act to suggest that the debtor's failure to achieve promises made in a confirmed plan reinstates an original obligation." *Id*. The appellant argues that *Curry* concerns only chapter 11 bankruptcies and that the provisions referenced are not applicable to chapter 9 bankruptcies. However, "confirmation [of a chapter 9 plan] effectively discharges the debtor from all debts except those 'owed to an entity that, before confirmation of the plan, had neither notice nor actual knowledge of the case.' " *Nebraska Security Bank v. Sanitary & Improvement District No. 7*, 119 B.R. 193, 195 (Bankr. D. Neb. 1990) (quoting 11 U.S.C. § 944(c)(2) (1988)). Pursuant to section 7.01 of the plan and operation of chapter 9 of the bankruptcy code, on confirmation of the plan of adjustment the indebtedness of the appellee to Freeman or his successors in interest in excess of $600,000 was discharged.

¶ 19   Appellant has cited no authority, and we have found no authority, permitting the state courts to rescind a "contract" made in a bankruptcy reorganization plan confirmed by the bankruptcy court. "[I]t is well established that sole jurisdiction in bankruptcy is lodged in the national government and that power is paramount and supersedes all

inconsistent state laws." *General Iron Industries, Inc. v. A. Finkl & Sons Co.*, 292 Ill. App. 3d 439, 444 (1997). The appellant is asking us to rescind part of a bankruptcy plan, which is solely under the jurisdiction of the federal courts. Instead, as the United States District Court noted in denying the appellant's appeal of the bankruptcy court order denying the motion to reopen the bankruptcy case, the appellant's remedy is to *enforce* the "contract" in the state courts. See *Holman v. Village of Alorton*, No. 13-CV-925-JPG (S.D. Ill. Oct. 30, 2013). Therefore, enforcement of the terms of the "contract" and not rescission is the appropriate remedy for the appellant. Thus, we hold that the appellant may seek to enforce in state court the contract made in the confirmed bankruptcy plan, but he may not seek to rescind the plan. We therefore affirm the judgment of the circuit court, which denied the appellant's motion for partial summary judgment and granted the appellee's motion for judgment on the pleadings as it relates solely to the issue of rescission.

¶ 20    The appellant has expressed concern that, if this court affirms the circuit court, he would be barred under *res judicata* from seeking to enforce the "contract." "Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890 (2009). The appellee does not dispute that it is behind on the payments owed to the appellant under the "contract." Further, the appellee has stated that it believes the appellant still may sue for enforcement of the "contract" without being barred by *res judicata*.

10

¶ 21 We agree with the appellee. "Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." 735 ILCS 5/2-604 (West 2014). The appellee, by its own admission, would not be surprised if the appellant were to seek to enforce the "contract," and the appellant can amend his complaint to seek this remedy. Further, Illinois recognizes the claim-splitting exceptions to the doctrine of *res judicata* set forth in section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments § 26(1) (1982)). Under the Restatement, a second action is not barred by *res judicata* if " 'the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein' " or if " 'the case involves a continuing or recurrent wrong.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 472-73 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 341 (1996)). The appellee's "express consent to [the appellant suing for enforcement of the 'contract'] would constitute an agreement" under the first exception and, therefore, would permit the appellant to enforce the "contract" without being barred by *res judicata*. *Piagentini*, 387 Ill. App. 3d at 896. Further, because the appellee continues to owe the appellant payments under the "contract," any further nonpayment would be a continuing or recurrent wrong that would also permit the appellant to enforce the "contract" without being barred by *res judicata*. Therefore, while we affirm the judgment of the circuit court, which denied the appellant's motion for partial summary judgment and granted the appellee's motion for judgment on the pleadings as it relates solely to the issue of rescission, we find that the appellant is not

11

barred by *res judicata* from bringing further action to enforce the "contract" in the chapter 9 confirmed plan of adjustment and therefore remand for further proceedings.

¶ 22                                    CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of St. Clair County and remand for further proceedings.


¶ 24    Affirmed and remanded.

2016 IL App (5th) 150404

NO. 5-15-0404

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

LARKIN HOLMON, Independent Administrator ) Appeal from the
of the Estate of Taymond Freeman, Deceased, ) Circuit Court of
 ) St. Clair County.
 Plaintiff-Appellant, )
 )
v. ) No. 14-L-136
 )
THE VILLAGE OF ALORTON, ) Honorable
 ) Randall W. Kelley,
 Defendant-Appellee. ) Judge, presiding.

_____

**Opinion Filed:** **October 19, 2016**

_____

**Justices:** Honorable S. Gene Schwarm, P.J.

 Honorable Judy L. Cates, J., and
 Honorable James R. Moore,
 Concur

_____

**Attorney** George R. Ripplinger, Ripplinger & Zimmer, LLC, 2215 West Main
**for** Street, Belleville, IL 62226
**Appellant**

_____

**Attorneys** Charles W. Courtney, Jr., Alana I. Mejias, Jayni A. Desai, Courtney,
**for** Clark & Mejias, P.C., 104 S. Charles Street, Belleville, IL 62220
**Appellee**

_____